# Nobles *et al.* v. Christian & Craft Grocery Co.

## Bill in Equity for Enforcement of a Lien.

1. *Contract for sale of timber; construction thereof as to creation of lien upon the timber.*—Where the owner of land sells all the merchantable timber thereon, taking a note for the purchase price, and it is stipulated in the contract of sale that the vendor, as security for payment of the note, should retain "a lien on all timber on hand at the time this note becomes due, cut from said lands" between the time of the commencement of the contract and the maturity of the note, the lien so retained by the vendor attaches only to the timber which is cut from his land from the time the contract went into effect, and which is in the purchaser's possession at the date of the maturity of the note.

2. *Pledge; when shown to exist.*—Where a person engaged in the timber business, in consideration of advances to be made to him to carry on his business, contracts to ship to the merchant making such advances all the timber he shall cut from certain lands, the merchant to sell said timber and apply the proceeds towards the payment of such advances as may have been made, and pay the balance, if any, to the timber dealer, and it is further stipulated that the timber should be delivered, as fast as it is ready for shipment, to craftsmen, such delivery to be regarded as a delivery to the merchant, the delivery of timber to said merchant under such contract, after advances had been made, constitutes a valid pledge of the timber to the merchant, with the stipulated power in him to sell it and apply the proceeds to the payment of the advances, and amounts to a disposition by the timber man of all rights thereto.

3. *Pledge of timber; when rights thereunder superior to rights of owner of land from which the timber was cut; bill in equity.*—Where the owner of land sells to one engaged in the timber business all the merchantable timber thereon, taking a note for the purchase price, and the contract of sale provides that the vendor should have a lien as security for the payment of the note upon all timber in the purchaser's possession at the date of the maturity of the note, which was cut after the commencement of the contract, the rights of the owner of the land are subordinate to the rights of a pledgee to whom the timber

cut from said land is delivered before the maturity of the note, under a contract made by the purchaser with said pledgee, to secure advances to carry on his timber business, and in which he contracted to deliver to him, as soon as ready, all timber cut from said land, and the merchant or pledgee should sell it and apply the proceeds to payment of the advances and pay the balance to the timber dealer ; and such pledge being perfected by the delivery of the timber before the maturity of the note, the owner of the land and holder of the note, can not maintain a bill to enforce his lien, without an offer to discharge the pledge.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. WILLIAM H. TAYLOE.

The bill in this case was filed on August 3, 1895, by the appellants, Stephen P. Nobles and John Kimbrough, against the appellees, the Christian & Craft Grocery Company, a corporation, Nepoleon B. Polk and Andrew J. Polk, the latter doing business under the firm name of N. B. Polk & Son. The facts of the case are sufficiently stated in the opinion.

The appeal is taken from the decree of the chancellor sustaining the demurrers interposed by the defendants to the bill, and this decree is here assigned as error.

GREGORY L. & H. T. SMITH, for appellants.—1. The court erred in sustaining the demurrers interposed to the bill. The bill of complaint does not state that the logs were to be delivered to the Christian & Craft Grocery Company for its account ; but that they were delivered to it under the agreement set out in paragraph 2 of the amended bill, which contract contemplates a delivery to said company to be sold for account of Polk & Son. But had the goods been delivered to the Grocery Company for its account, this would not have rendered them purchasers for value.

No price had been agreed upon and no sale could be complete without this. The agreement between the Grocery Company and Polk & Son could by no stretch be said to be more than an equitable mortgage, made without any consideration. There was no credit given or agreed to be given on the account and extension of the debt. It was purely a voluntary consignment to the Grocery Company, as the agent of Polk & Son, and in no sense constitutes the consignee a purchaser for value who would be protected against the equity of the com-

plainant.—*Thames v. Rembert*, 63 Ala. 561; *Gafford v Stearns*, 51 Ala. 443; *Wells v. Morrow*, 38 Ala. 129; *Pennox v. Sayre*, 3 Ala. 470; *Andrews v. McCoy*, 8 Ala. 920; *Boyd v. Beck*, 29 Ala. 713.

2. Complainants have only an equitable mortgage. The contract out of which appellant's rights arose, does not purport to convey title, but merely "retains a lien" on the timber therein mentioned to secure the debt. The authorities are without conflict that such a charge is purely equitable. Every agreement for a lien or charge *in rem* constitutes a trust, and is accordingly governed by the general doctrine of trusts. Such a lien or charge is called an equitable mortgage, because courts of chancery regarding them as trusts to be enforced, attach to them the incidents of a mortgage. Thus an agreement that bills should be paid out of the proceeds of certain property has been held to create an equitable mortgage. Miller on Equitable Mortages, 3. An agreement pledging and hypothecating property for the payment of certain bills, was enforced as an equitable mortgage.— *Fletcher v. Morey*, 2 Story Eq., 555. A contract that a party should have and maintain a lien on chattels was characterized as in the nature of an equitable mortgage, and as such enforced.—*Dunning v. Stearns*, 9 Barb. 630. And an unsealed instrument of writing, pledging the real and personal estate of a railroad company for the faithful performance of a contract was held by this court to be an equitable mortgage.—*M. & C. P. R. R. Co. v. Talman*, 15 Ala. 475; *Donald v. Hewett*, 33 Ala. 548. An agreement that a debt shall be paid out of the proceeds of certain property, or that the property shall be bound for the debt, has been usually construed to create an equitable mortgage. Such a lien, being governed by the general doctrine of trusts, constitutes one of the peculiar subjects of equity jurisdiction, being incapable of enforcement at law.—*Powell v. Jones*, 72 Ala. 398. In the following cases, contracts similar to that under which appellants claim, were construed equitable mortgages.— *Butts v. Broughton*, 72 Ala 298; *Newlin v. McAfee*, 64 Ala. 357; *Powell v. Jones*, 72 Ala. 398; *Jackson v. Rutherford*, 73 Ala. 156; *Jones v. Anderson*, 76 Ala. 431.

3. A court of equity has jurisdiction to subject the proceeds of the logs in the hands of the grocery company. The right which was here infringed and which

[Nobles *et al.* v. Christian & Craft Grocery Co.]

is here sought to be enforced, is not a legal, but an equitable right. It has been held that the infringement of an equitable right, for instance, the conversion of property, upon which the plaintiff held an equitable lien or mortgage, would sustain an action on the case, or for money had and received.—*Collier & Son v. Faulk*, 69 Ala. 58 ; *Hurst v. Bell*, 72 Ala. 340. But it has never been doubted that a court of equity would enforce such equitable liens as such, and in doing so, would follow the proceeds of the property upon which the lien existed into the hands of all purchasers with notice.—*Stringfellow v. Nix*, 73 Ala. 213 : 2 Story's Eq. Jur., § 1232. Referring to this matter, it is said in *Collier v. Faulk*, *supra*, "But such a mortgage (i. e. a mortgage on property to be acquired in the future) confers an equitable lien, which, though it can not be enforced *as such except in equity*, can be made the basis of an action of assumpsit for money had and received, or an action on the case at law." And a court of equity will enforce this lien by following the proceeds into the hands of third persons, even though such third persons might also be liable in case or in assumpsit.—*Bellinger v. Lehman*, 103 Ala. 385 ; *Waldron v. Simmons*, 28 Ala. 633 ; *Crass v. M. & C. R. R. Co.*, 96 Ala. 452 ; 2 Story's Eq. Jur., § 1256.

McINTOSH & RICH, *contra.*—The third ground of demurrer, and the one upon which the chancellor sustained the demurrers, is that these appellants have a full, complete and adequate remedy at law. It seems to us very clear from the allegations of the bill that this is true. Paragraph 3 of the amended bill shows that this appellee received the logs with notice of appellants' lien, and that before they were sold and while appellee held them, appellants demanded payment of their note or the delivery of their logs. They had an adequate and complete remedy then and there to have gotten out an attachment and enforced their lien as the statute provides.—Acts, 1894-95 p. 250. This court has repeatedly held, in cases of this character, and where the facts were almost identical with those in the present case, that the remedy at law was clear, and a bill in chancery would not lie.—*Coffey v. Hunt*, 75 Ala. 236 ; *Kennon v. Wright*, 70 Ala. 434 ; *Hussey v. Peebles*, 53 Ala. 432 ; *Hudson v. Vaughn*, 57 Ala. 609.

HEAD, J.—On December 1, 1894, the appellants, Stephen P. Nobles *et al.*, being the owners of certain timber lands, sold to N. B. Polk & Son all the merchantable pine timber thereon, from one foot in diameter and up, at the price of $1,800, for which the purchasers gave sellers their three notes, one due January 1, 1895, another May 1, 1895, and the other September 1, 1895, each for $600. The writing evidencing the sale contained the clause : "Contract commencing January 1, 1895, and ending January 1, 1896." Right of way over the land was, by stipulation, secured to purchasers to enable them to convey said timber to the Bigbee river. The agreement also contained the following clause : "And it is fully understood and agreed to by the parties of the second part [the purchasers], that the parties of the first part retain in said sale by this contract and our promissory note bearing even date with this contract, a lien on all timber on hand at the time this note becomes due, cut from said lands since January 1, 1895, to May 1, 1895, for the payment of said note due May 1, 1895, for $600. And on all timber cut from May 1, 1895, until the last note is paid, of $600, due September 1, 1895."

"On and prior to October 30th, 1894," (as the bill states) "said Polk & Son were cutting timber from said lands, under an agreement with complainants (the said sellers) to give them a given sum per 1,000 feet, for stumpage, for such timber as they might cut from said lands, and on that day (October 30, 1894) Polk & Son entered into a contract with appellee, Christian & Craft Grocery Company, providing, 'That for and in consideration of the advances hereafter to be made to us by the Christian & Craft Grocery Company, we, Napoleon B. Polk and Andrew J. Polk, doing business under the firm name and style of N. B. Polk & Son, hereby agree and bind ourselves to ship to the said Christian & Craft Grocery Company, all of the timber we shall hereafter get out from the lands of Steve Nobles, said Christian & Craft Grocery Company to sell said timber, and apply the net proceeds thereof to such account as we may, from time to time, owe to them, and should there at any time remain a balance of the net proceeds of said timber after paying the account that may be due to the Christian & Craft Grocery Company, they shall pay the same over to us, our survivors, successors, personal representatives, or assigns.

[Nobles *et al.* v. Christian & Craft Grocery Co.]

"We further agree and bind ourselves to deliver said timber, as fast as the same is ready for shipment, to raftsmen to hold possession thereof for the said Christian & Craft Grocery Company, it being intended that our delivery to such raftsmen shall be a delivery of said timber to the said Christian & Craft Grocery Company."

The lands referred to in the contract are averred to be the same as those from which the timber was sold by the subsequent contract of December 1, 1894; and the Grocery Company, when its contract was made, had notice that timber was being gotten off the land under a stumpage contract of some character.

The bill avers that on May 1, 1895, the said Grocery Company had on hand 504 pine logs which had been cut by N. B. Polk & Son from said lands, and by them shipped to the Grocery Company under the said contract of October 30, 1894, and that on or about July 15, 1895, the Grocery Company sold said logs and credited the proceeds, amounting to over $700 to Polk & Son, upon an indebtedness then due to the Grocery Company. It is averred that the Grocery Company had notice that complainants had a lien upon the timber cut from the said lands, for stumpage upon the same, and that the notice was received by them prior to the time when they received the said 504 logs, and that complainants, after May 1, 1895, and before said logs were sold by the Grocery Company, claimed of that company either payment of the note due May 1, 1895, or delivery to them of said logs, but the Grocery Company declined to acknowledge the validity of any lien or claim held by complainants.

The bill is filed to enforce the alleged lien on said 504 logs, or their proceeds, for the satisfaction of the note due May 1, 1895.

The Grocery Company interposed the following demurrers to the bill, which the chancellor sustained:

1st. Because said bill of complaint fails to show that N. B. Polk & Son has on hand any of the logs delivered to the defendant at the date of the maturity of the note *Exhibit "B"* to the original bill of complaint.

2d. Because said bill of complaint shows that said logs were to be delivered to this defendant for its account, and to be credited to N. B. Polk & Son, the sur-

15

plus, if any, to go to Polk & Son; and it fails to show there was any surplus.

3d. Because said bill shows that the complainants have a full, complete and adequate remedy at law.

4th. Because said bill of complaint is repugnant and inconsistent in this : That it seeks in one portion therein to claim from this defendant stumpage at a given sum per thousand feet for said timber, and in another portion it claims of defendant payment of the note made by N. B. Polk & Son.

We remark, in order that it may be corrected in any further prosecution of the cause, that the bill is fatally defective, on demurrer properly assigned, in that it fails to show that the 504 logs in controversy were cut after January 1, 1895. The contract, given its strictest construction in favor of complainants, confines the lien retained by complainants, for the security of the note maturing May 1, 1895, to timber *cut after January 1, and before May 1, 1895.* For aught the bill shows, these logs were cut prior to January 1, 1895. The objection is not sufficiently presented by the demurrer, and we do not make it a ground of affirmance.

The paramount consideration on this appeal is the proper construction to be given that clause of the contract which limits the lien retained by the complainants to "all timber *on hand* at the time the note becomes due," &c. It is obvious upon the whole bill, that it was the design of the parties, when they entered into the contract of sale of the timber, that Polk & Sons, the purchasers, should have the right to carry on the timber business, and, in the regular course of such business, up to May 1, 1895, dispose of the timber to be cut by them from the lands, between the dates specified, free from any liens or claims on the part of the sellers ; and that the lien retained should attach only to such timber as the purchasers might have on hand, undisposed of, on May 1, 1895. The question then arises whether the bill shows that these logs had been so disposed of by the purchasers prior to said May 1, 1895.

It is contended by the complainants that the effect of the contract of October 30, 1894, between Polk & Son and the Grocery Company, under which it is averred the latter received the logs in controversy, was to constitute the Grocery Company agent of Polk & Son, to receive the

timber shipped to it, and sell the same and apply the proceeds to the payment of any indebtedness which might be owing it by Polk & Son, or, if no such indebtedness, to pay the proceeds over to Polk & Son, and that the shipment and delivery of the logs to the Grocery Company created or effectuated no right or title in it to the logs; that its only legal or equitable right in the premises was that arising after sale by it of the logs, to apply the proceeds to any indebtedness owing it—the logs, until sale, remaining the absolute property of Polk & Son. Hence, as contended, the logs, being in the hands of the Grocery Company, unsold, on May 1, 1895, they were being held by it as agent for Polk & Son, its principals; and that being the day for the lien of complainant to attach, or rather for the ascertainment of the property upon which it would attach, the lien became complete and effectual upon the logs in question.

We do not think the contract will bear this interpretation. It is very clear the parties to it contemplated that Polk & Son would need advances to carry on their business, and arrangements were desired to be made to obtain them from the Grocery Company. Security was necessary to effectuate the arrangement. The written agreement, whilst not effectual as an obligation on the part of the Grocery Company to make advances to Polk & Son, was capable of ripening into, and controlling the interpretation of, legal rights, by dealings of the parties under it. Advances actually made, and timber actually delivered, under the agreement, created a valid pledge of the timber, with the stipulated power to sell and apply the proceeds to the payment of the advances. The advances being made, the pledge was, by the carefully guarded contract, effectual from the delivery of the timber to the raftsmen, who were made, for that purpose, the agents of the Grocery Company.

Nor do we doubt that a pledge, effectuated by these means and for these purposes, was a disposition of the timber by Polk & Son, within their reserved power under their contract of purchase with the complainants. They had the right, under that contract, to make the timber available for the carrying on of their business, in the exercise of which they were not confined to absolute sales and use of the proceeds, but could utilize it as the means of security for loans, according to usual and cus-

tomary business methods. The pledge of these logs in question, having been perfected before May 1, 1895, the lien of the complainants was subject to it, and can not be enforced without an offer to discharge it. The bill was not framed with any view of redemption, or to reach any surplus of proceeds of the Grocery Company, after the discharge of its own pledge, and the first and second grounds of demurrer were, consequently, well taken. The third and fourth grounds were bad.

The decretal order of the chancellor sustaining the demurrer must be affirmed.

Affirmed.