### In re AUTOMOBILE LIVERY SERVICE CO.

(District Court, N. D. Alabama, S. D.    February 8, 1910.)

### No. 9,483.

1. SUBROGATION (§ 23*)—ADVANCES BY PLEDGEE—DISCHARGE OF INCUMBRANCE.

   Where, at the time certain automobiles were pledged to a bank for a loan to pay the purchase price, the title was in the seller as security for the price, the bank's money having been used to satisfy the seller's claim, the bank was subrogated to the seller's rights as against the buyer's trustee in bankruptcy, though the pledge may have been invalid because made by the buyer's officers without authority from its board of directors.

   [Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60, 62, 64; Dec. Dig. § 23.*]

2. SUBROGATION (§ 23*)—FORM OF TRANSACTION.

   Where a loan was made by a bank to a buyer of certain automobiles, and the proceeds were availed of to release them from the seller's lien for the purchase price to the buyer, it was no objection to the bank's right of subrogation to such lien that the note was in form made by the buyer to its president and immediately indorsed by him to the bank to secure the president's individual liability.

   [Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60, 62, 64; Dec. Dig. § 23.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** PLEDGES (§ 11*)—ELEMENTS—DELIVERY TO PLEDGEE.

A pledge unaccompanied by delivery of the pledged property to the pledgee is invalid.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 29; Dec. Dig. § 11.*]

**4.** BANKRUPTCY (§ 161*)—PLEDGES—POSSESSION—PREFERENCES.

Where a pledge of property by a bankrupt was invalid in its inception because of nondelivery to the pledgee, but in accordance with a prior agreement the property was surrendered to the pledgee on the pledgor's default, but within four months prior to bankruptcy, such possession related back to the time of the agreement, so that the pledge did not constitute an illegal preference except as against intervening claimants who had perfected liens on the pledged property in the meantime.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261, 263; Dec. Dig. § 161.*]

In the matter of the bankruptcy of the Automobile Livery Service Company. On petition to review findings of a referee denying the claim of the Jefferson County Savings Bank and the Harris Transfer & Warehouse Company. Petition granted, and claims allowed.

L. J. Haley, Jr., for claimant.
Tomlinson & McCullough, for petitioning creditors.
George Huddleston, for trustee.

GRUBB, District Judge. The Jefferson County Savings Bank and the Harris Transfer & Warehouse Company propounded their claim before the referee in bankruptcy for two automobiles, which were in the possession of the latter, as warehouseman for the former, when the petition was filed, and which were surrendered by the latter to the receiver in bankruptcy. The automobiles were shipped to the bankrupt by the makers, with draft and bill of lading attached, and the president and secretary of the bankrupt, in order to raise the money to take up the drafts and secure the bills of lading, executed its notes, payable to its president, and indorsed by him to the claimant, the Jefferson County Savings Bank, the proceeds of which, when discounted, were credited to the bankrupt and used by it to take up the drafts and secure the bills of lading for the two automobiles, which were then delivered to it by the railroad company. Each of the notes recited that the automobile, the release of which it secured, was pledged for the payment of the note and all subsequent indebtedness to the bank, but possession of each automobile remained in the bankrupt until the maturity and default of the first note falling due, whereupon the claimant, with consent of the bankrupt, took possession of the automobiles under its contract for pledge, and stored them with the warehousing company, in whose possession they were when the petition was filed, and by whom they were surrendered to the receiver of the bankrupt estate. The transaction constituted a pledge as distinguished from a mortgage. The bankrupt was insolvent when the claimant took possession of the automobiles.

The trustee asserts title to be in the bankrupt upon the grounds: (1) That the pledge was made by the officers of the bankrupt, without authority from its board of directors; (2) that the note, to secure which the pledge was given, was executed to the president of

the bankrupt, and not to the claimant; and (3) that there was no delivery of the articles pledged to the pledgee at the time of the creation of the pledge. The referee denied the claimant's petition, and to review his order this petition is filed by the claimant.

1. The first objection to the validity of the pledge is that the pledge was executed by the officers of the bankrupt, without authority from its board of directors. At the time the pledge was given, the title to the pledged property was in the maker for his security for the purchase price. The pledge was given to secure, and did secure, money, which was used by the bankrupt to pay the purchase price and relieve the property from the lien upon it, created by the retention of title in the maker. Conceding the want of authority in the officers of the bankrupt, in the absence of a resolution of its directors, to give the pledge, the trustee cannot claim the title to the pledged property, the purchase money lien upon which was relieved by the loan, secured by the pledge, and at the same time repudiate the loan and pledge. His rights in that event would be those of the bankrupt only, and would consist of an election to repudiate the loan and pledge, surrendering possession of and title to the pledged property to the claimant, or electing to retain the pledged property to ratify the loan and pledge by which the bankrupt secured possession of and title to it. The bankrupt or his trustee can only take the pledged property cum onere, and the claimant is subrogated to the lien of the maker of the automobiles, to satisfy which the proceeds of the loan were used. In the case of Bolman v. Lohman, 74 Ala. 511, the Supreme Court of Alabama said:

"But the rule is settled that where money is expressly advanced in order to extinguish a prior incumbrance, and is used for this purpose, with the just expectation on the part of the lender of obtaining a valid security, or where its payment is secured by mortgage, which for any reason is adjudged to be defective, the lender or mortgagee may be subrogated to the rights of the prior incumbrancer, whose claim he has satisfied; there being no intervening equity to prevent." Scott v. Land Co., 127 Ala. 161, 28 South. 709; Bigelow v. Scott, 135 Ala. 236, 33 South. 546.

It is consequently unnecessary to consider the question of the authority of the president and secretary to borrow the money and give the pledge. The cases of Jordan & Co. v. Collins, 107 Ala. 572, 18 South. 137, and Goodyear Rubber Co. v. Scott, 96 Ala. 439, 11 South. 370, involve the authority of an officer of a corporation, without action of its directors, to make a transfer of all its property for the payment of existing debts, constituting a general assignment, and are to be distinguished from the transaction in this case, which was had in the due course of the bankrupt's business as a going concern, and did not have the effect of terminating its existence as such, as in the cases mentioned.

2. The note was payable to the president of the bankrupt, but was immediately indorsed by him to the claimant bank, which placed the proceeds to the credit of the bankrupt, by whom they were used to take up the drafts and secure the automobiles. This form of the transaction was doubtless to secure to the claimant the individual liability of the president of the bankrupt, as indorser of the note, in addition to the pledge of the property described therein. The loan was made

to the bankrupt, and the proceeds availed to release the pledged property to the bankrupt, and the claimant should be subrogated to the lien on the automobiles, which its money so advanced satisfied, regardless of the form which the transaction took.

3. The agreement to pledge the automobiles was not accompanied by their delivery to the pledgee, and was invalid as a pledge, for that reason, in its inception. Upon the maturity of the first note which fell due and the dishonor of it by the bankrupt, the claimant took possession of the automobiles and stored them for its account with the warehouse company. This was done before bankruptcy proceedings were instituted, but within four months thereof, and while the bankrupt was insolvent; and from the default in payment of the note, the insolvency of the bankrupt and an intent to prefer, if a preference was created by the transaction, was reasonably to have been inferred by the claimant. In the absence of the prior agreement to give the pledge, the subsequent surrender of the property would without doubt have constituted a voidable preference. If possession had accompanied the agreement to give the pledge, the pledge would equally without doubt have been valid, though given within four months of the filing of the petition, because of the contemporaneous consideration moving to the bankrupt for the agreement to give the pledge. The pertinent inquiry then is as to whether the subsequent delivery of possession of the pledged property to the pledgee, though without a new consideration, relates back to the original agreement and is rescued from the infirmity it would otherwise be subject to by reason thereof. Subsequent delivery of property agreed to be pledged has been held by the Supreme Court of Alabama to validate the pledge, except as against intervening liens which have attached in the interim. Nobles v. Christian & Craft Grocery Co., 113 Ala. 220, 20 South. 961; American Pig Iron Storage Warrant Co. v. German, 126 Ala. 239, 28 South. 603, 85 Am. St. Rep. 31.

If the decisions of the state court hold valid transactions to create liens in cases in which delivery is made subsequent to the agreement to give the lien but before the right of intervening creditors has been fastened upon the property, the delivery of the property, under such circumstances, will not constitute an illegal and voidable preference under the bankruptcy law. Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956.

In the case of Sabin v. Camp (C. C.) 98 Fed. 974, the court held that a transaction which was so consummated within the four months was not a preference, because it had originated before, and used this language:

"What was done was in pursuance of the pre-existing contract, to which no objection was made. Camp furnished the money out of which the property, which is the subject of the sale to him, was created. He had good right, in equity and in law, to make provision for the security of the money so advanced, and the property purchased by his money is a legitimate security and one frequently employed. There is always a strong equity in favor of a lien by one who advances money upon the property which is the product of the money so advanced. This was what the parties intended at the time, and to this, as already stated, there is and can be no objection in law or in morals. And when,

at a later date, but still prior to the filing of the petition in bankruptcy, Camp exercised his rights under this valid and equitable arrangement to possess himself of the property and make sale of it in pursuance of his contract, he was not guilty of securing a preference under the bankruptcy law."

The Supreme Court of the United States approved the case last cited in the case of Thompson v. Fairbanks, supra, and, in that case, said:

"The principle that the taking possession may sometimes be held to relate back to the time when the right to do so was created is recognized in the above case. So in this case, although there was no actual existing lien upon this after-acquired property until the taking of possession, yet there was a positive agreement, as contained in the mortgage and existing of record, under which the inchoate lien might be asserted and enforced, and when enforced by the taking of possession that possession under the facts in this case related back to the time of the execution of the mortgage of April, 1891, as it was only by virtue of that mortgage that possession could be taken. The Supreme Court of Vermont has held that such a mortgage gives an existing lien by contract, which may be enforced by the actual taking of possession, and such lien can only be avoided by an execution or attachment creditor whose lien actually attaches before the taking of possession by the mortgagee. Although this after-acquired property was subject to the lien of an attaching or an execution creditor if perfected before the mortgagee took possession under his mortgage, yet, if there was no such creditor, the enforcement of the lien by taking possession would be legal, even if within the four months provided in the act. There is a distinction between the bald creation of a lien within the four months and the enforcement of one provided for in a mortgage executed years before the passage of the act, by virtue of which mortgage and because of the condition broken title to the property becomes vested in the mortgagee, and the subsequent taking possession becomes valid, except as above stated."

In the case of Sexton v. Kessler & Co. (C. C. A.) 172 Fed. 535, 544, 21 Am. Bankr. Rep. 807, 820, the opinion of the court, rendered by Judge Noyes, says of the last-mentioned case and that of Humphrey v. Tatman, supra:

"While the Supreme Court in the cases referred to treats the validity of the mortgages and the rights of the mortgagees thereunder to be matters of local law, in my opinion it also states this underlying and controlling distinction: The exercise of a pre-existing right well founded in equity is not a preference, although occurring within the prescribed period; 'the bald creation of a lien within four months' is a preference."

In view of the principle asserted by these cases, it seems to me that the exercise of the right to take possession of the pledged property, within the four months, did not constitute an illegal preference, because it was done pursuant to a valid agreement to pledge for which a present consideration had moved to the bankrupt, and therefore related back to such agreement, except as against intervening claimants who had perfected liens on the pledged property in the interim, of whom there were none. The trustee represented no class of creditors who could successfully attack the transaction.

The petition for review is granted, and an order will be made by the court granting the prayer of the original petition and directing the two automobiles to be turned over to the petitioners in the original petition filed with the referee; and the trustee is taxed with the costs of this proceeding.