## In re HICKERSON.

### (District Court, D. Idaho, N. D. June 19, 1908.)

**1. BANKRUPTCY—"VOIDABLE PREFERENCE"—KNOWLEDGE OF INSOLVENCY.**

A bank, which took a chattel mortgage from a debtor to secure a past indebtedness and withheld the same from record for nearly a year, and until a few days prior to the bankruptcy of the mortgagor, *held* to have had reasonable cause to believe that he was in failing circumstances when it was taken, and insolvent when it was recorded, which rendered it a "voidable preference," under Bankr. Act July 1, 1898, c. 541, § 60, cls. "a," "b." 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445) as amended in 1903 (Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1907, p. 1031]).

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5498–5499; vol. 8, p. 7759.]

**2. SAME—FRAUDULENT CHATTEL MORTGAGE—RIGHT OF TRUSTEE TO ATTACK.**

Rev. St. Idaho 1887, § 3396, provides that a chattel mortgage "is void as against creditors" of the mortgagor unless recorded, and section 3386 that the enforcement of a chattel mortgage may be contested "by any person interested in so doing." *Held*, that a chattel mortgage given by a merchant on his stock of goods to a bank to secure a past indebtedness which was by agreement withheld from record for nearly a year and until within a few days of the mortgagor's bankruptcy, during which time he continued in possession of the property, selling the goods as usual, was fraudulent and void as matter of law as against any creditors having the right to contest the same, and that the trustee in bankruptcy into whose possession the property came and creditors whose claims had been allowed were by reason of such facts "interested" in the specific property as part of the bankrupt's estate in the custody of the court for distribution, and both under the bankruptcy act and the state statute entitled to contest the mortgage when it was sought to be enforced in the bankruptcy court.

**3. CHATTEL MORTGAGES—EVIDENCE OF FRAUD—FAILURE TO RECORD.**

An agreement between the mortgagor and mortgagee to withhold a chattel mortgage from record is evidence of a fraudulent intent.

In Bankruptcy. On Validity of Chattel Mortgage.

A. S. Hardy, for First National Bank.

A. C. Emmons, J. B. Campbell, and Jas. De Haven, for objecting creditors and trustees.

DIETRICH, District Judge. On March 22, 1906, the bankrupt, being engaged in the retail mercantile business at Grangeville, Idaho, and being indebted to the First National Bank of that place, executed two notes, each for $3,000, due on demand, and secured by a chattel mortgage of the same date, in favor of the bank, covering the

stock of goods, which apparently consisted in the main of such articles as are usually carried in a hardware store. After a general reference to the merchandise as being situate in a certain store building and also in a warehouse, both located in Grangeville, there is set forth the following specific description:

"* * * And all other goods, wares, and merchandise forming a part of the stock of said Walter Hickerson in said stores and warehouses, or situated adjacent thereto, or elsewhere in Idaho county, and owned by the first parties [Hickerson and his wife] or either of them, together with all fixtures, consisting of shelving, counters, showcases, desk, safe, scales, etc., used in connection with and situated in either said stores or warehouse of said first parties, together with all additions which may be made to said stock of goods and merchandise, whether in said stores or warehouse, or elsewhere, and also all book accounts, notes, and debts due or owing, or to become due or owing, both for and on account of sales of goods, wares, and merchandise in said merchandise business and otherwise; all of the said property being now in the possession of said parties of the first part in the city of Grangeville, Idaho county, Idaho, and free from all incumbrances."

It is further provided:

"That it is understood and agreed that the said parties of the first part may remain in the possession of said property and stock of merchandise, and may sell and dispose of the same in the usual course of trade, as the agents of second party only, and that all such sales shall be for its benefit, and that first parties shall account to second party on the last day of each month, commencing March 31, 1906, for the proceeds of all such sales as its agents, and the proceeds of the sales of the said personal property shall be the property of the second party, whether consisting of cash, notes, or accounts, and the said proceeds shall be applied to the payment of said indebtedness."

The mortgage was acknowledged and sworn to in the manner required by the statutes of Idaho, and it was delivered to the mortgagee upon the day of its execution. The bankrupt was indebted to the bank on overdrafts in an amount a little less than the aggregate of the mortgage notes, and the amount of the difference was placed to his credit, with authority to check against it. The mortgage was not recorded until February 11, 1907. In the meantime the mortgagor continued to carry on his mercantile business in the ordinary way, and out of the proceeds of his sales and collections he paid the expenses of the business, including freight bills and clerk hire, and the balance he deposited from time to time in the bank of the mortgagee; the amounts so deposited aggregating a total sum of nearly $12,000. From time to time he drew checks upon the bank, and directed it to honor overdrafts in the payment of accounts against him, so that when he went into bankruptcy he was indebted to it in an amount approximating $3,000, besides the notes secured by the mortgage.

On February 16, 1907, five days after the mortgage was recorded, the mortgagor filed his petition, and upon February 20th he was adjudged a bankrupt. A trustee was appointed and took possession of all of his property, including that claimed to be covered by the mortgage, and upon April 6, 1907, applied for authority to sell the stock of merchandise. In response to a notice of hearing upon such application the mortgagee appeared and asked that the mortgage lien be recognized in any order of sale which should be made, whereupon

the trustee and most of the creditors objected to a recognition of the validity of the mortgage. It was thereupon agreed that an order for sale might be made, with the understanding that the proceeds of the property claimed to be subject to the mortgage lien should be held in lieu of the property itself; neither the mortgagee nor the objecting parties losing any rights or being in any wise prejudiced by reason of the conversion of the property into money. Accordingly an order was made and the property was sold. Evidence was taken before the referee, and by stipulation the whole matter is submitted to the court for its original decision upon the evidence, without any findings or report from the referee.

Upon the part of the trustee and the objecting creditors it is contended: (1) That under the terms of the mortgage the indebtedness secured thereby must be deemed to have been paid, in view of the deposit by the mortgagor in the bank of the mortgagee of proceeds from the sales of the mortgaged property amounting to more than the indebtedness secured by the mortgage; (2) that the mortgage is voidable as a preference under section 60a of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]); (3) that the mortgage is fraudulent, and that as against the trustee and creditors the lien thereof cannot be enforced upon any of the assets of the estate.

Upon the first point, it is, I think, fairly inferable from the evidence that there was some understanding between the parties from time to time by which the mortgagor waived his right to have the proceeds of the business applied to a reduction of the mortgage indebtedness. The record does not disclose an express agreement to that effect, but the conduct of the parties was such that the bankrupt must have known and acquiesced in, if he did not in terms authorize, the credit of his deposits to his current account, upon which he drew from time to time. This being the case, he could not be heard to object to the diversion of the funds from the purpose designated in the mortgage. Clearly a second mortgagee or other lienor would have the right to raise such objection; but I am not clear that either the trustee or the objecting creditors occupy such a favorable position in this proceeding, and in consideration of the view I have taken of the other questions, and the doubt I entertain as to the real understanding of the parties, I have concluded to consider the diversion of the proceeds of the mortgaged property only so far as the fact is material to the question of the good faith of the parties.

Does the mortgage transaction, as disclosed by the record, constitute a preference under section 60a of the bankruptcy act? By the amendment of 1903 (Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. 1907, p. 1031]) it is provided that, to constitute a preference, the period during which the transfer is made shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required. The mortgage "transfer" must therefore be deemed to have been made on the 11th day of February, 1907, only five days before the filing of the petition in bankruptcy. Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956.

It is earnestly argued by counsel for the bank that the evidence is insufficient to show the insolvency of the debtor on February 11, 1907; but, although the record is somewhat meager and unsatisfactory, I think it is sufficient to bring the transaction within the statutory definition of a preference. While it does not appear that the mortgagor was insolvent in contemplation of law on the 22d day of February, 1906, still we have the undisputed fact that at that time the bank, which had been extending to him credit without security, was demanding that its claim be secured, and the mortgagor declined to give a mortgage upon property which he could claim as exempt, but did give a mortgage upon his stock of merchandise, which was the only other property he had free from incumbrance. It is also undisputed that from the time the mortgage was executed until the same was filed the business was conducted at a loss, and the mortgagor's financial ability declined. From the conduct of the parties and their close business relations, I cannot avoid the conclusion that when the mortgage was given the failure of the mortgagor, while not desired, or even expected, was a possible contingency contemplated by both parties, against which it was thought the mortgage would, in a measure, protect the bank, and that when the mortgage was filed the mortgagee knew or had reason to believe that the mortgagor was preparing to go into bankruptcy; nor can I doubt that the effect of the mortgage, if enforced, will be to enable the mortgagee to obtain a greater percentage of its debt than other creditors of the same class. It is argued by counsel for the bank that there is no conclusive proof that all creditors will not be paid in full; but from the showing made entire satisfaction is, to say the least, wholly improbable, and I doubt whether the bank's suit would be so vigorously pressed if it could be reasonably expected that all claims would be paid in full. I conclude that the mortgage must be held to be voidable as a preference under the law.

We come to a consideration of the third objection. The mortgage was not recorded for nearly a year after it was executed and delivered, and then just a few days before the petition in bankruptcy was filed. A mere failure to record an instrument is not conclusive evidence of a wrongful intent. Failure may be accounted for by inadvertence or by ignorance of the necessity for so doing. Upon the other hand, an agreement between parties to withhold an instrument from public record is not infrequently a circumstance of great weight in determining the good faith of the parties. It is manifest that at the hearing the bank felt the strain of this phase of the case. That the failure to record was not due to mere oversight, or to ignorance of the law, is conceded; and no rational explanation was or could be given for the delay in recording, other than an understanding between the parties that the instrument should be withheld. Both the cashier of the bank and the mortgagor testified that at the time the mortgage was executed the mortgagor asked that it be withheld from record, and the bank assented to the request, but did not agree that it should be withheld for any specific length of time. It was not to be expected that the time would be fixed, nor is that a very material consideration. It is sufficient if, with the knowledge and consent of both parties, the lien was kept

secret. Apparently it was not to the interest of either party to record the mortgage. It must be presumed that both the cashier of the bank and the bankrupt, being intelligent business men, realized that knowledge of the existence of an instrument of this character, under the circumstances surrounding the bankrupt's business, would immediately and absolutely destroy his credit in the mercantile world. The bankrupt could not have met his obligations, and the result must necessarily have been the closing up of his business by attachment or by some other appropriate proceeding, to the prejudice of both the mortgagee and the mortgagor.

It is true that, in answer to leading questions put to them by counsel for the bank, both the mortgagor and the cashier asserted their good faith and the absence of any intention upon their part to wrong or defraud other creditors, and the cashier also stated that he made no agreement to keep the mortgage off the records; but the admitted fact is that at the request of the mortgagor, made at the time of the execution of the mortgage, it was kept secret. The withholding was deliberate, and not a mere "neglect," as is now argued by counsel for the bank. In response to a question as to how it happened that the mortgage was placed on record just before the bankruptcy proceedings were instituted, the cashier testified that "we were talking about it for a month or so at the bank," etc. If the mortgage was given and accepted in good faith, solely for the security of the bank, and without any consciousness of the effect of withholding it from the records upon other creditors, it is not easy to imagine why the matter of recording was being talked about for "a month or so." The obvious course to pursue was to place the instrument on record. Upon the other hand, the parties must have known, and did know, that a withholding of the mortgage from record would have a tendency to lull other existing creditors into a feeling of false security, and would invite and encourage the extension of new or additional credit.

Nor are the reasons given by the cashier of the bank for taking the mortgage satisfactory. At one point of his testimony, in explaining why the bank took the mortgage, the witness stated that "we did it as a precaution in case of his death," etc., meaning the death of the mortgagor. If such an answer is to be accepted in its full import, apparently it is to be construed as meaning that the mortgage was to become effective only in case of the death of the mortgagor. If so, the condition has not arisen, and the mortgage could not be enforced. But I think that upon the whole record it must be concluded that Hickerson's business was not prospering; that the bank became anxious because of its large unsecured claim, and desired security; that naturally it sought a mortgage upon property that had stability, and which could be mortgaged without materially interfering with the debtor's business, and which would be free from the legal difficulties attending the mortgaging of a stock in trade; that the debtor, being conscious of the condition of his business, declined to hypothecate property which he could claim as exempt in case of disaster; that he was reluctant to give a mortgage upon his stock in trade, but consented to do so with the understanding that for some time, at least, the mortgage would not be

recorded; that in accordance with this understanding the mortgage was executed and delivered, and was withheld from the record until it appeared that the mortgagor could no longer meet his obligations and continue in business.

The validity of such a mortgage is a local question, and the decisions of the state courts will control. Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; In Ryan v. Rogers, 94 Pac. 427, it was recently held by the Supreme Court of Idaho that:

"The fact that the mortgagee permitted the mortgagor to remain in possession of the property which was within itself something like double the value of the debt secured, for a period of one year, and for at least nine months after breach of the conditions named in the mortgage, and sell and dispose of the property, without any attempt to collect any part of the mortgage debt, or to take possession of the property, would, as a matter of law, be such a fraud upon attaching creditors and purchasers as to avoid the mortgage."

Under the doctrine of this case, as well as others cited in the opinion therein, I think that as to attaching creditors and purchasers without notice this mortgage must be held void, even had it not been withheld from record. In the Ryan-Rogers Case it is further said that:

"The mortgage would be good as to any remaining property covered by it as between the mortgagor and the mortgagee, in the absence of attachment or other lien or incumbrance prior to the mortgagee taking possession."

And again the court says:

"In this case the mortgagee took possession of the remaining property covered by the mortgage prior to any creditors' rights initiating by reason of an attachment lien or other incumbrance on the property whereby a general creditor could bring himself within the purview of the statute and acquire a right to contest the mortgage. Neustadter Bros. v. Doust, 13 Idaho, 617, 92 Pac. 978. Possession of the remaining mortgaged property having been taken by the mortgagee prior to the rights of any creditor attaching thereto, the mortgagee would be exempt from the application of the general rule."

Excluding from consideration, for the time being, the effect of the provisions of the bankruptcy act, the mortgage must, as we have seen, be held to be in violation of local law, and to be void as to persons having the right to assert its invalidity. The serious question therefore, is whether or not this trustee or these objecting creditors have such right. Unfortunately the question is not conclusively answered in the Ryan-Rogers Case. The court there quotes, with apparent approval, from In re Rodgers, 125 Fed. 169, 60 C. C. A. 567, the statement that:

"With respect to the right to attack transfers or incumbrances by the bankrupt, as either actually or constructively fraudulent, the trustee stands in the same position as an attachment or execution creditor."

But, upon the other hand, Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, is cited in support of the proposition that the mortgage under consideration "would be good as to any remaining property covered by it as between the mortgagor and the mortgagee, in the absence of attachment or other lien or incumbrance prior to the mortgagee taking possession." Moreover, to just what extent the conclusions reached in the Ryan-Rogers Case are based upon a con-

struction of the bankruptcy act, and to what extent upon the local law, is not entirely clear. The inquiry is important, in view of the fact that the construction of the local law by the highest court of the state is conclusive and binding, whereas its interpretation of the bankruptcy act must, where there is conflict, yield to the decisions of the superior federal courts. Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956.

In the Ryan-Rogers Case the mortgagee had taken possession of the mortgaged property before the initiation of bankruptcy proceedings, and apparently this fact was considered very material to the conclusion which was reached. The mortgagee there, having seized the property, proceeded to sell it according to law, and the trustee brought the action against the mortgagee and the sheriff to recover a judgment for damages. Here the mortgagee did not take possession; but the mortgaged property, together with other property of the bankrupt estate, passed into the possession of the trustee. The other creditors filed their claims against the estate, and the same were allowed. The bank presented its claim, with the prayer that it be allowed and that its mortgage be recognized as a lien, thus seeking equitable relief.

By section 3396 of the Revised Statutes of Idaho of 1887 it is provided that:

"The right of a mortgagee to foreclose, as well as the amount claimed to be due, may be contested in the district court by any person interested in so doing, for which purpose an injunction may issue, if necessary."

We have here a clear recognition, if not the creation, of a right upon the part of any "person interested" to question the validity of a mortgage. It is not apparent why a trustee in bankruptcy, having possession of the bankrupt estate, and charged with the duty of caring for and distributing it, is not "interested," within the purview of this statute, or why a creditor, whose claim against the estate has been presented and allowed, has not so connected himself with the mortgaged property that he may be considered in privity therewith. The reasons for the general rule that a creditor at large cannot attack a chattel mortgage are suggested in the following passage, quoted from the opinion in Neustadter Bros. v. Doust, 13 Idaho, 617, 92 Pac. 978. The court, in referring to the plaintiff, says:

"He has commenced no action against Lang and Wunderlich [the mortgagors], has never attached this or any property, and in no way connects his right, interest, or claim with the property that he seeks to restrain the sheriff from selling, and no assurance is given when he will prosecute his action, or that he will ever obtain a judgment against them."

Here the mortgaged property, being a part of the bankrupt estate, is in the possession of the court. The trustee, as an officer of the court, holds it in trust for distribution to those who are legally entitled thereto. The creditors have been brought into court, and have asserted their rights by presenting and having approved their claims against this trust fund. The mortgagee has come affirmatively asserting its lien and appealing to the court for equitable consideration. Upon principle, why should not the trustee and creditors be heard to object to the va-

lidity of the mortgage, equally with one who has procured a judgment at law or has caused the property to be attached?

Independent of a provision of law like that contained in section 3396 of the Idaho Revised Statutes of 1887, the Supreme Court of California, in Ruggles v. Cannedy, 53 Pac. 911, reached the conclusion that under the state insolvency act a creditor, whose claim against the insolvent estate has been allowed, may sue to set aside a mortgage which has not been seasonably recorded, although such creditor has acquired no lien by judgment or attachment, and also that an assignee in insolvency, after the claims of creditors have been allowed, may institute on their behalf an equitable action to avoid the mortgage. The decision is well considered, and its reasoning is equally applicable to the creditors and trustee in bankruptcy.

By section 3386 of the Revised Statutes of Idaho of 1887 it is provided that a mortgage of personal property "is void as against creditors" unless it is executed with certain formalities, and is "recorded in like manner as grants of real property." The statutes of New York contain a similar provision. In the Matter of the New York Economical Printing Company, 110 Fed. 514, 49 C. C. A. 133, the Circuit Court of Appeals of the Second Circuit, upon the assumption that, under the rule prevailing in the courts of New York, a nonfiled chattel mortgage was void only as to judgment creditors or creditors having acquired some lien, and not as to general creditors, held that a trustee in bankruptcy could not, upon behalf of the general creditors of the estate, assert the invalidity of such a mortgage. In a subsequent decision by the Court of Appeals in that state (Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885), it was considered that the conclusion reached in the Economical Printing Company Case was due to a misconception of the established rule, which, accurately stated, is that a nonfiled mortgage is void as to general creditors, but it cannot be attacked until they are in a position to seize the mortgaged property by virtue of a judgment, attachment, or otherwise. It being a question of local law, the state court declined to follow the Economical Printing Company Case, and held that a trustee in bankruptcy was in position to attack a nonfiled mortgage. And more recently in the Matter of Gerstman, Bankrupt, 157 Fed. 549, the Circuit Court of Appeals, having under consideration the right of a trustee to attack such a mortgage, uses the following language:

"As we are bound to follow the construction of the state law adopted by the highest court of the state, the case of Economical Printing Company must be held to have gone too far in deciding that a nonfiled mortgage is valid as to general creditors. Regarding the mortgage as void, though not subject to attack, because there were no judgments against the bankrupt at the time of the adjudication, the question is whether the trustee is in a position to attack it. We think he is."

It is not thought that the rule in Idaho should be held to be different from that of New York. In case of an unfiled mortgage the statute itself in terms declares that it is void, not as against "attaching creditors," but as against "creditors." By construction the courts add that the invalidity can be asserted only by a creditor who in some way connects himself with the property. Here, as we have seen, the requisite

privity exists. See, also, In re Garcewich, 115 Fed. 87, 53 C. C. A. 510; In re Standard Telephone & Electric Light Company (D. C.) 157 Fed. 106; In re Perkins (D. C.) 155 Fed. 237.

With much confidence the bank relies upon the doctrine of Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, and York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. By these decisions, undoubtedly, the rule is established or recognized that in the absence of fraud the bankruptcy act does not confer upon the trustee power to attack a mortgage upon behalf of a general creditor who has secured no lien. In so holding, however, the court defines only the authority conferred upon the trustee by the federal statute. It is not to be inferred that it would be incompetent for the state Legislature in terms to declare that a nonfiled chattel mortgage shall be void as to trustees in bankruptcy, or for the state courts, interpreting existing local law, to declare such a mortgage, or a mortgage permitting the mortgagor to sell the mortgaged property and apply the proceeds thereof to his own use, void as against trustees in bankruptcy and creditors whose claims have been presented and allowed. Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956; In re Gerstman (C. C. A.) 157 Fed. 549.

But under the bankruptcy act alone it is thought the trustee has authority to attack this mortgage. As stated in Thompson v. Fairbanks, the rule is:

"Under the present bankruptcy act the trustee takes the property of the bankrupt in cases unaffected by fraud in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provision of the act. In re Garcewich, 115 Fed. 87, 53 C. C. A. 510."

This language is substantially quoted from the opinion in the Garcewich Case, where it is also said that:

"It is not the meaning of the present act that the institution of proceedings in bankruptcy should secure immunity to the title of fraudulent vendors or mortgagors, and deprive creditors of a resort to property out of which, but for the proceeding, they could have satisfied their claims."

And again:

"Even in the case of a chattel mortgage, when it is understood between the mortgagor and the mortgagee that the mortgagor may sell the chattels in his business and use the proceeds, the transaction is fraudulent at law as against the creditors of the mortgagor."

It is not unreasonable to assume, therefore, that in the Thompson-Fairbanks Case the court considered an understanding "between the mortgagor and the mortgagee that the mortgagor may sell the chattels in his business and use the proceeds" as constituting a "case" so "affected by fraud" as to remove it from the class of instruments against which the trustee could assert only such objections as could have been interposed by the bankrupt himself. In other words, the general rule is applicable only to "cases unaffected by fraud," and a mortgage accompanied with such an agreement is not such a "case." But here the mortgage not only has the vices denounced in the Garcewich Case and

162 F.—23

in Ryan v. Rogers, but there is the understanding to withhold it from the record. Such an agreement is evidence of fraudulent intent. Rogers v. Page, 140 Fed. 596, 72 C. C. A. 164; In re Doran, 154 Fed. 467, 83 C. C. A. 265; Blennerhassett v. Sherman, 105 U. S. 100, 26 L. Ed. 1080. In the last case the court, with apparent approval, quotes from a Kentucky decision to the effect that such an agreement, "if not directly within that class of acts which the law denominates 'constructive frauds,' approximates so nearly to it that the party avowing himself a participant in such transaction ought not to receive the countenance or aid of the chancellor in enforcing any lien or claim growing out of it as against a third person."

In view of this feature of the transaction, it is clear that the trustee has the authority to question the validity of the mortgage under the rule laid down in Thompson v. Fairbanks. See, also, Security Warehousing Company v. Hand, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117, and First National Bank v. Staake, 202 U. S. 141, 26 Sup. Ct. 580, 50 L. Ed. 967. In the latter case it is said:

"The rule that the trustee takes the estate of the bankrupt in the same plight as the bankrupt is not applicable to liens, which, although valid as to the bankrupt, are invalid as to creditors."

It follows that the mortgage must be held to be void, and, in accordance with the written stipulation of the parties filed herein, the referee is directed to allow and recognize the claim of the First National Bank of Grangeville as an unsecured claim, as of the date it was filed.