## BANK OF OAKMAN v. UNION COAL CO.

(Circuit Court of Appeals, Fifth Circuit. October 30, 1926.)

No. 4895.

I. **Bankruptcy** ⟝188(1).

Whether asserted lien on property of bankrupt is valid depends on laws of state where property is situated.

2. **Chattel mortgages** ⟝138(3)—Chattel mortgagee of coal land lessee held not to have lien on personalty superior to lien for royalties reserved in lease to lessor.

Under Alabama laws, chattel mortgagee of lessee of coal lands *held* not to have lien on machinery and personal property on lease superior to rights of assignee of lessor, to whom lease reserved lien to secure payment of royalties, nor was such mortgagee a purchaser without notice.

Appeal from the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

In the matter of the bankruptcy of the Union Coal Company. From a decree sustaining the validity of a lien asserted by the Union Coal Company, the Bank of Oakman, as subsequent mortgagee, appeals. Affirmed.

Alexander C. Birch, of Birmingham, Ala. (Weatherly, Birch, McEwen & Hickman, of Birmingham, Ala., on the brief), for appellant.

A. B. Foster, of Birmingham, Ala. (Martin, Thompson, Foster & Turner, of Birmingham, Ala., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal from a decree of the District Court in a bankruptcy proceeding sustaining the validity of a lien asserted by the Union Coal Company, assignee of the lessor of coal-bearing land, upon machinery and other personal property acquired after the execution of the lease, and holding such lien to be superior to the lien of a subsequent mortgage from the lessee to the Bank of Oakman upon a part of such machinery and personal property. The lease reserved to the lessor $190 per month as a minimum royalty during the continuance of the lease.

On account of the depressed condition of the coal market and cessation of mining operations, the lessor agreed with the lessee that payment of the minimum royalty would not be required until mining operations were resumed. Such operations never were resumed, and the lessee went into bankruptcy. The lease also gave the lessor a lien "on all personal property and improvements made on said lands during the term of said lease for rent or royalty here agreed to be paid," etc. The bank took a mortgage upon the lessee's interest in the lease, as well as upon some of the personal property that was then in existence and in place upon the leased premises, but which had not been put there until after the lease was executed, and now makes the contention that it acquired a lien superior to any claim of the coal company under the lease, on the ground that at the time the lease contract was entered into none of the property now in controversy was in existence and in place on the premises.

[1, 2] Whether the coal company has a valid lien depends upon the laws of Alabama, where the property is situated. Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577. In Abraham v. Carter, 53 Ala. 8, it is said: "At common law, things not in actual existence, but which are said to have a potential existence—that is, things which are the natural product or expected increase of something already belonging to the vendor— were the subject of sale or assignment. * * * A thing not having an existence, actual or potential, but the future acquisition of which is contemplated, if not capable of assignment or sale, is the subject of a valid agreement to assign or sell. * * * It may be that, in a court of law, an assignment only of a right or interest, which is absolutely fixed and in esse, is enforced. In a court of equity, assignment, not only of choses in action, but of contingent interests and expectancies, and also of things, which have no present actual or potential existence, but rest in mere possibility only, are supported. The assignment operates by way of present contract, to take effect and attach to the things assigned, when and as soon as they come in esse." To the same effect is Hurst v. Bell, 72 Ala. 336, where it is also said that a court of equity will enforce and protect the equitable interest in personal property that is subsequently acquired, when it comes into existence, against all persons other than bona fide purchasers without notice.

This doctrine is not limited in Alabama to liens upon growing crops, but may be applied to after-acquired property of a railway company. Electric Lighting Co. of Mobile v. Rust, 117 Ala. 680, 23 So. 751. The doctrine thus announced rests upon the maxim that equity regards as done that which ought to be done, and it is the prevailing doctrine in the courts of this country, including the Supreme Court of the United States. Pomeroy's Equity Jurisprudence, § 1235; Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865; Lewin v. Telluride Iron Works Co. (C. C. A.) 272 F. 590. The bank cannot claim protection as a purchaser without notice, for it had knowledge of the existence of the lease, as is shown by the fact that it included the lease in its mortgage. If it did not have actual notice, it was in possession of facts sufficient to enable it to ascertain by inquiry the nature of the coal company's rights. Bump on Fraudulent Conveyances, 478.

It is suggested that the minimum royalty was to be remitted unless it should be earned, and it was never earned; but the record shows only that payment of the minimum royalty was postponed, and not that the lessee's obligation to pay it was waived or surrendered by the lessor. We are of opinion that, as between the lessor and lessee, the coal company's lien became a valid and binding one as soon as the machinery and other personal property was placed on the leased premises, and that the bank does not stand in the relation of a bona fide purchaser without notice.

The decree is affirmed.