**In the Matter of Stanley Andrew HUSTON d.b.a. Huston Implement Company, Bankrupt.**

**No. 74482.**

United States District Court
N. D. Ohio, E. D.
July 17, 1956.

Hugh I. Troth, Ashland, Ohio, for petitioner.

Arthur W. Negin, Mansfield, Ohio, David Arbaugh, Mansfield, Ohio, for trustee.

WEICK, District Judge.

This is a proceeding to review a turnover order of the Referee in Bankruptcy, in which he ordered the Massey-Harris-Ferguson, Inc. of Columbus, Ohio, hereinafter referred to as Massey, to surrender to the Trustee in Bankruptcy certain farm equipment or to pay its value amounting to $3,215.60.

The basis for the Referee's order was that Massey, within four months prior to bankruptcy, had repossessed from the bankrupt, while he was insolvent, farm equipment which it had theretofore sold him for resale, under a conditional sales agreement not filed with the county recorder, and that this transaction amounted to a preference, void under Section 60, subs. a and b of the Bankruptcy Act, 11 U.S.C.A. § 96, subs. a and b.

The Referee in Bankruptcy adopted findings of fact and conclusions of law from which it appears that the bankrupt was a dealer in farm equipment and had made purchases, for a number of years, of equipment from Massey or its predecessors, for resale.

On February 4, 1955, the bankrupt and his wife executed a promissory note to Massey for $9,460.20 and a chattel mortgage on farm equipment to secure the same. These instruments are pleaded in Massey's answer and cross-petition and are attached thereto as exhibits and a balance of $6,612.59, as of the date of adjudication, was claimed.

The mortgage, however, does not appear to describe any of the chattels involved in the turnover order and the Referee made no such finding.

On February 17, 1955, Massey and the bankrupt entered into a sales and service agreement (Exhibit "A") which appointed the bankrupt as a dealer and recited that it was accepted by Massey on June 6, 1955. This agreement was not pleaded in Massey's answer or cross-petition.

The agreement provided:

"1. Goods Covered

"This agreement shall apply only to farm tractors, farm equipment, attachments and service parts, to be sold at retail, as offered for sale from time to time by the Massey-Harris Division of the Company and delivered to the Dealer by it and shall continue until superseded by another written agreement between the Company and the Dealer or otherwise terminated."

"15. Title Retainment

"The title for all goods shipped under this agreement is to remain in the Company and all goods will be held by the Dealer, at all times, subject to the Company's order and full right of repossession after default by Dealer, until the purchase price is fully paid in United States money."

"22. Cancellation for Cause

"It is agreed that in the event the Dealer shall be in default of any of his obligations under this agreement, or shall violate any of the terms of this agreement, or shall make or attempt to make an assignment for the benefit of creditors, or shall be decreed bankrupt or institute voluntary bankruptcy proceedings under any other insolvency law, or shall have a permanent or temporary receiver appointed for the management of the Dealer's affairs, then the Company may, at its option:

"(a) Immediately cancel this agreement and declare all indebtedness of the Dealer due and payable, and repossess all goods on hand for which the Dealer is indebted to the Company, or

"(b) Establish terms of cash with order or sight draft with Bill of Lading or C. O. D. on any goods to be shipped or delivered thereafter to the Dealer, or

"(c) Exercise any other legal remedy available to the Company under the laws of the State in which this agreement is made."

The agreement, on its face, applies only to purchases to be made by the bankrupt after the date when the agreement became effective.

Retention of title was provided "for all goods shipped under this agreement."

The Referee found that all of the chattels described in the turnover order had been sold, delivered and invoiced by Massey to the bankrupt in 1954 (prior to the conditional sales agreement) except one No. 14 26" tooth harrow with draw bar, Invoice M 3192 (Exhibit "B") $78.60, which was sold on June 10, 1955. Obviously, the 1954 sales of equipment to the bankrupt were not under the conditional sales agreement.

Massey claims, in its brief, that its predecessor company, the Massey-Harris Company, had entered into a conditional sales contract with the bankrupt and his then partner Earl Huston on November

10, 1950; that the bankrupt is the successor of the co-partnership; that Massey is the successor of the predecessor company by merger; that the present conditional agreement supplements the first one.

The Referee made no such findings of fact, and the transcript of testimony, which is attached to his certificate, contains no evidence of any previous conditional sales agreement. The Referee was, therefore, fully justified in not making such a finding.

It would appear to be clear that the 1954 items were sold by Massey to the bankrupt on open account without any security and the repossession of the equipment by Massey for credit on its account, on December 19, 1955, (three weeks before bankruptcy) was a preference void under the Bankruptcy Act.

This leaves for consideration the validity of the conditional sales agreement as applied to the only item it covers, namely, one harrow worth $78.60.

No affidavit was attached to the conditional sales agreement as to the amount of the claim, and the conditional sales agreement was not filed with the county recorder as required by Revised Code of Ohio § 1319.11 which provides that a conditional sales agreement which does not comply with the statutory provisions shall be void "as to all subsequent purchasers and mortgagees in good faith and for value, and creditors * * *."

Under Ohio law an unfiled chattel mortgage or conditional sale agreement was void as against execution creditors, Cass v. Rothman, 42 Ohio St. 380, against an assignee for the benefit of creditors, Hanes v. Tiffany, 25 Ohio St. 549, Betz v. Snyder, 48 Ohio St. 492, 28 N.E. 234; 13 L.R.A. 235, against a state court receiver for an insolvent debtor, Doyle, Receiver v. Yoho Hooker Youngstown Co., 130 Ohio St. 400, 200 N.E. 123, against an executor or administrator of an insolvent estate, Keller v. Shaeffer, Admr., 29 Ohio St. 264 and against a trustee in bankruptcy, York Mfg. Co. v. Cassell, 201 U.S. 344, 26 S.Ct. 481, 50

L.Ed. 782; In re Bettman-Johnson Co., 6 Cir.; 250 F. 657; Potter Mfg. Co. v. Arthur, 6 Cir., 220 F. 843.

Until such time as Massey repossessed the equipment, it had nothing but a secret lien void against attaching creditors.

Its lien was perfected, if at all, within three weeks before bankruptcy when it repossessed the equipment. Until then, so far as creditors were concerned, its lien had not attached.

But Massey claims that its lien was valid against the Trustee in Bankruptcy because it was actually perfected by the repossession before bankruptcy. 9 Ohio Jur.2d 860, pp. 197, 198, citing Cass v. Rothman, supra, Calder v. Bliss Auto Sales, 18 Ohio App. 242.

Even conceding that Massey's lien had attached and was perfected on December 19, 1955 when it repossessed the equipment, this still does not dispose of the question whether or not the attachment of such lien, on the eve of bankruptcy, was a preference void under § 60, subs. a and b of the Bankruptcy Act.

Section 60, sub. a(1) of the Bankruptcy Act provides:

"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

The word "transfer" was redefined in the 1952 amendment of § 1(30) to the Bankruptcy Act, 11 U.S.C.A. § 1(30) as follows:

" 'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon

property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor; * * *."

Whatever may have been the law before, this all inclusive language certainly now embraces not only an unfiled conditional sales agreement, but also a repossession under it. 3 Collier on Bankruptcy 14th Ed.Supp. p. 93, § 60.43, Text p. 944.

Section 60 sub. a(2) provides in part as follows:

"For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee."

Under this section the effective date of the perfection of the lien would not relate back to the date of the sale.

The policy of the law was set forth in § 60, sub. a(6) which provides:

"The recognition of equitable liens where available means of perfecting legal liens have not been employed is declared to be contrary to the policy of this section."

In the case at bar, available means for the perfection of the lien of the conditional sales agreement were provided in Revised Code of Ohio, § 1319.11. This law was not complied with by Massey who held the secret lien for more than six months until only three weeks before bankruptcy and then repossessed the equipment in order to get ahead of the creditors who were then pursuing the bankrupt.

Prior to the enactment of § 60, sub. a and § 1(30) of the Bankruptcy Act, Massey's repossession of the equipment would have validated its conditional sales agreement as against the Trustee in Bankruptcy. Calder v. Bliss Auto Sales, supra; Humphrey v. Tatman, 198 U.S. 91, 25 S.Ct. 567, 49 L.Ed. 956; Thompson v. Fairbanks, 196 U.S. 516, 25 S.Ct. 306, 49 L.Ed. 577.

In Corn Exchange National Bank & Trust Co. v. Klauder, Trustee in Bankruptcy, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, the Supreme Court in construing § 60, subs. a and b of the Bankruptcy Act held:

"Within four months of bankruptcy the debtor had assigned accounts receivable as security for concurrent loans. Notice to those who owed the accounts was not given, although under applicable local law notice was necessary in order to preclude possible superior rights in subsequent bona fide purchasers of the accounts. Held, that the assignments were preferential under § 60(a) of the Bankruptcy Act and thus avoidable by the trustee in bankruptcy under § 60(b) thereof." (Syl.)

Mr. Justice Jackson, who delivered the opinion of the Court, said:

"The Committee of the House of Representatives which reported § 60, sub. a as quoted above was fully aware of the vicissitudes of its predecessors. These are recited in detail elsewhere, and need not be repeated here beyond a general statement that for thirty-five years Congress has consistently reached out to strike down secret transfers, and the courts have with equal consistency found its efforts faulty or insufficient to that end. Against such a background, § 60, sub. a was drawn and reported to Congress with this explanation of its purpose and effect: 'The new test is more comprehensive and accords with the contemplated purpose of striking down secret liens. It is provided that the transfer shall be deemed to have

been made when it has become so far perfected that neither a bona-fide purchaser nor creditor could thereafter have acquired rights superior to those of the transferee. As thus drafted, it includes a failure to record and any other ground which could be asserted by a bona-fide purchaser or a creditor of the transferor, as against the transferee. A provision also has been added which makes the test effective even though the transfer may never have actually become perfected.' "

The learned Justice, in a footnote to the opinion, cited the statement of Professor McLaughlin at the hearings on the revision of the Bankruptcy Act held by the House Judiciary Committee as follows:

"He stated Thompson v. Fairbanks, 196 U.S. 516, 25 S.Ct. 306, 49 L.Ed. 577, as applying a rule of state law that a mortgagee by taking possession of the mortgaged property at a time subsequent to the execution of the mortgage thereby validated it as of the time of execution. He said that § 60, sub. a would prevent such validation by relation back. Similar disapproving reference was made to Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275; Carey v. Donohue, 240 U.S. 430, 36 S.Ct. 386, 60 L.Ed. 726; and Martin v. Commercial National Bank, 245 U.S. 513, 38 S.Ct. 176, 62 L.Ed. 441, with the explanation that 'You are going to have taken away some advantages that some people have enjoyed, and certain practices are going to be altered to some extent. But you have that every time you pass any kind of a commercial law.' " 318 U.S. at page 438, 63 S.Ct. at page 682, 87 L.Ed. 884, footnote 11.

There can be no question now that Congress, by clear and appropriate language, has outlawed secret liens. There is no room for judicial construction except to give effect to the law.

Repossession, within four months from bankruptcy, no longer validates a lien or makes it retroactive.

The order of the Referee in Bankruptcy was correct and is, therefore, affirmed.