### In re NATIONAL VALVE CO.

(District Court, N. D. Ohio, W. D. November 11, 1905.)

#### No. 928.

BANKRUPTCY—LIENS—CHATTEL MORTGAGE ON AFTER-ACQUIRED PROPERTY.

Under the law of Ohio relating to chattel mortgages, which governs as to their validity and the rights of the mortgagee in bankruptcy proceedings in that state, a mortgage covering goods which may be afterwards acquired by the mortgagor to replace other mortgaged goods sold by him creates a valid lien on such after-acquired property from the time the mortgagee takes lawful possession of the same thereunder; and where the mortgage was given more than four months prior to the bankruptcy of the mortgagor the taking of possession by the mortgagee within such four months with the consent of the mortgagor, although with knowledge of the mortgagor's insolvency, does not constitute a voidable transfer or preference under the bankruptcy act, where it was not done to hinder, delay, or defraud other creditors, but solely to protect his own rights, and was authorized by the terms of the mortgage.

In Bankruptcy. On review of decision of referee.

King & Ramsey, for petitioner.

Hewson L. Peeke and Amos Burt Thompson, for trustee.

TAYLER, District Judge. This case is before the court upon the petition of the trustee in bankruptcy for the review of the finding of the referee respecting the rights of creditors in the personal property of the bankrupt. It appears from the evidence that on November 2, 1903, the bankrupt, by its duly authorized officers, executed and delivered to F. P. Zollinger, trustee, a certain mortgage to secure the payment of an authorized issue of the company's bonds, and that this mortgage covered all parcels of real estate belonging to the company and all articles of personal property "which are now by it owned or hereafter to be by it acquired, or which in any way belong to or appertain to its said business, together with all of its product of manufactured and unmanufactured merchandise now on hand, or which may be by it manufactured or acquired."

By the terms of the mortgage, the mortgagor was to continue in possession of the property, with authority to manage and enjoy the same, and to take, use, and apply the rents and profits for the maintenance of the business, and distribute the net annual income to the stockholders, after payment of the principal and interest of the bonds according to the terms thereof. The mortgage further authorized the company, with the written consent of the trustee, to sell the real or personal property of the company, then owned or thereafter acquired,

free of incumbrances and trusts; but provided that the proceeds of any such sale should become subject to the lien of the mortgage. The mortgage further provided that if default should be made in the payment, when due, of the principal or interest of the bonds secured by the mortgage, or if the company should allow any lawful taxes or charges to fall in arrears, whereby the security of the mortgage might be impaired, then the company should, upon demand of the trustee, surrender the actual possession of the property conveyed or intended to be conveyed, together with all books, records, papers, and accounts of the company. The mortgage was further conditioned that the trustee for the bondholders might take possession of the property and effects of the company, and dispose of the same for the benefit of the bondholders. This mortgage was duly filed for record as a real estate mortgage, and filed and refiled as a chattel mortgage.

From the date of the execution of the mortgage, November 2, 1903, to November 29, 1904, the company retained possession of its real estate and personal property mentioned in the mortgage; and, with the knowledge and consent of the trustee, sold from time to time its manufactured stock in the ordinary course of its business. It also, between those dates, acquired additional personal property, of the value of several thousand dollars, which was in its possession on the date last named; and the purchase price of much of this after-acquired property had not, on the last-named date, been paid. On May 2, 1904, and again on November 2, 1904, the company defaulted in the payment of its interest warrants then due and attached to its outstanding bonds, and on November 29, 1904, the trustee, claiming to act under and by virtue of the authority conferred upon him by the terms of the mortgage, took possession of all of the property of the company. On November 30, 1904, a petition in involuntary bankruptcy was filed against the company, which filed an answer admitting its insolvency, and was, on December 6, 1904, duly adjudicated a bankrupt. A trustee in bankruptcy was later duly elected and qualified, who took possession of the real estate of the bankrupt, and thereafter filed a petition, for an order to sell the bankrupt's personal property.

To this petition Zollinger, as trustee for the bondholders, filed an answer and cross-petition, claiming the right of possession of the property of the bankrupt, and that, as such trustee, he was entitled to a prior lien upon the same, to the extent of the amount of the bonds outstanding and the interest thereon. An answer was filed by the trustee in bankruptcy to this cross-petition, denying the validity of the mortgage as a chattel mortgage upon the personal property of the bankrupt, and alleging that, within four months prior to the commencement of the bankruptcy proceedings, the company transferred all of its personal property to such trustee, "with the intent to hinder and delay other creditors of said corporation, and with the intent to prefer said Zollinger, trustee, over the other creditors of said corporation"; and alleging, further, that Zollinger, as such trustee, at the time of such transfer, had reasonable cause to believe that it was intended thereby to give him a preference. The referee held that the trustee for the bondholders had a valid chattel mortgage upon all of the personal property of which he took possession

on November 29, 1904, to the extent claimed by him; and that his act in taking possession was not a transaction constituting a voidable preference, or made to hinder, delay, or defraud creditors. This case has been very fully and satisfactorily argued by counsel on both sides, and the court has been put in possession of a large number of authorities pertinent to the questions involved.

From them all, these two propositions are certainly abstracted: (1) That, under the law of Ohio, as declared in the case of Francisco et al. v. Ryan, 54 Ohio St. 307, 43 N. E. 1045, 56 Am. St. Rep. 711, it is definitely decided that a stipulation in a chattel mortgage that it shall be a lien on any goods the mortgagor may thereafter purchase and place in stock to supply the place of those he should sell, while not creating a present lien, nor a lien when and as the goods are purchased, constitutes a valid contract for a lien on such acquired property; and (2) that possession thereof, lawfully taken by the mortgagee, has the same effect of protecting it in his hands from the claims of the mortgagor's creditors as has possession taken of property owned by the mortgagor at the time of the execution of the mortgage. Now, such being the state of the law of Ohio, the Supreme Court of the United States has as definitely established what is the law applicable to such a case as this, where the bankruptcy act is invoked. This is declared in the case of Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577. The syllabus of that case is as follows:

"Whether, and to what extent, a chattel mortgage, which includes after-acquired property, is valid is a local and not a federal question, and in such a case this court will follow the decisions of the state court.

"The enforcement of a lien by the mortgagee taking possession, with the consent of the mortgagor, of after-acquired property covered by a valid mortgage made and recorded prior to the passage of the act, is not a conveyance or transfer under the bankrupt act; and, where it does not appear that it was done to hinder, delay, or defraud creditors, it does not constitute a preference under the act, although at the time of the enforcement the mortgagee may have known that the mortgagor was insolvent and considering going into bankruptcy, and the petition was filed within four months thereafter."

In so far as the facts in the case of Thompson v. Fairbanks are material, they correspond with the facts in the case under consideration. It is true that in that case the mortgage was given prior to the passage of the bankrupt law; but I do not discover anything in the opinion of the court, or in the principles governing the decision, or governing such a case, that would make the time of giving the mortgage, as respects the date of the bankruptcy act, in any respect material.

It seems, therefore, clear that the act of the bondholders' trustee in taking possession of the mortgaged property, whether acquired before or after the giving of the mortgage, was within his rights; and the decision of the referee is affirmed.