## In re STREETER.

District Court, D. New Hampshire. June 27, 1927.

**1. Bankruptcy ⟨key⟩188(1)—Liens invalid under law of state are invalid against trustee. (Bankruptcy Act, § 67a [Comp. St. § 9651]).**

Under Bankruptcy Act, § 67a (Comp. St. § 9651), a lien on property of bankrupt, which for any reason is invalid under the law of the state, is invalid against his trustee.

**2. Bankruptcy ⟨key⟩184(3)—Whether taking possession by chattel mortgagee within four months preceding bankruptcy validates lien depends on state law.**

Whether taking possession by chattel mortgagee within four months of bankruptcy makes lien good from beginning depends on law of state.

**3. Bankruptcy ⟨key⟩184(3)—Possession of property, taken within four-month period by mortgagee in mortgage fraudulent under law of state, gives no lien as against trustee (Bankruptcy Act, §§ 47, 67c [Comp. St. §§ 9631, 9651]).**

Under the law of New Hampshire, a chattel mortgage, under which mortgagor is permitted to retain possession of property, make sales, and retain the proceeds, is presumptively fraudulent against creditors, and is not validated by taking possession of the property by mortgagee, and where such possession is taken within four months prior to bankruptcy of mortgagor, and when he is insolvent, no valid lien is created as against his trustee, under Bankruptcy Act, §§ 47, 67c (Comp. St. §§ 9631, 9651).

In Bankruptcy. In the matter of Howard I. Streeter, bankrupt. On report of Special Master, recommending disallowance of claim to lien of J. Wilbur Bogardus. Report confirmed, and claim disallowed.

Roy M. Pickard and W. H. Watson, both of Keene, N. H., for claimant.

Chester B. Jordan, of Keene, N. H., for trustee.

MORRIS, District Judge. It appears from the master's report that Howard I. Streeter, the bankrupt, was engaged in the garage business at Hinsdale, N. H.; that he purchased merchandise from time to time from J. Wilbur Bogardus, and that on the 22d day of September, 1923, he gave Bogardus a note for $3,500, payable on demand, giving as security therefor a personal mortgage on the following merchandise:

"All the stock, oils, tools, tires, all fixtures, furnishings, and all other supplies and stores of every kind whatever, in the garage at Hinsdale, including any automobiles now owned by me, and also all future supplies and stock purchased and placed in said garage."

. The mortgage was duly recorded in the town clerk's office in Hinsdale on the same day it was executed. The mortgagor retained possession of the mortgaged property and disposed of·it for his own benefit, without accounting to the mortgagee for the proceeds, renewing the stock from time to time. On May 2, 1924, Bogardus, recognizing the invalidity of his mortgage, obtained counsel and went with his attorney to the mortgagor's garage and took possession of the entire stock, for the purpose of foreclosing the mortgage. He locked up the garage and posted notices for a sale of the mortgaged property to take place on the 7th day of May. A few hours prior to the sale a deputy sheriff appeared with a writ in favor of one of Streeter's creditors. He found the garage locked. Bogardus was found at the Streeter house and the key was demanded from him. He got a key from Mrs. Streeter, who was the owner of the real estate, unlocked the garage, let the deputy sheriff enter, and an attachment of the property was made. Bogardus called his attorney over the telephone, obtained advice, and after doing so went ahead with the sale. Those attending the sale were informed that the property was under attachment, and apparently no one bid, except Bogardus, who bid in the property for $1,000. The place was locked up by the deputy sheriff, who continued in possession of the property until after Howard I. Streeter was, on May 26, 1924, adjudged a bankrupt, and a trustee had been elected and qualified. The trustee took possession and sold the property for the sum of $1,300. This is considerably less than the amount due on Bogardus' mortgage. The money now in the hands of the trustee is claimed by the trustee as assets of the bankrupt estate, to be distributed to the creditors. Bogardus claims that it should be applied to his mortgage.

Considerable evidence was taken at the hearing before the master, bearing upon the question of whether or not the mortgagee retained possession of the mortgaged property from the 2d day of May until the 7th day of May, when he attempted to sell the same; also as to whether or not he voluntarily surrendered possession to the deputy sheriff. The master has found adversely to the mortgagee upon these issues.

Upon careful study of the master's report and the evidence, it appears to the court that there was a bona fide attempt made by the mortgagee to foreclose his mortgage. It must be conceded that he was present, about to sell at auction the mortgaged property, when the attachment was made. This·fact was admitted by the deputy sheriff. Whether Bogardus had constantly retained possession between the 2d and the 7th day of May is not so material to a decision of the case as the fact that the deputy sheriff found him in possession on the 7th. That the surrender to the deputy sheriff was not entirely voluntary is shown by the fact that Bogardus immediately called his attorney on the telephone for advice and, having obtained it, proceeded with the sale. It seems to me that there is no such voluntary surrender of possession as would in itself defeat the mortgagee's rights.

There are, however, other considerations which to my mind have a more important bearing upon the rights of the parties than the mere question of possession.

[1] Bankruptcy Act, § 67a (Comp. St. § 9651), provides that "claims which for want of record *or for other reasons* would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate." Section 67e (Comp. St. § 9651) provides that "all conveyances, transfers, or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, territory, or district in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt."

[2] In the case of Humphrey v. Tatman, 198 U. S. 91, 25 S. Ct. 567, 49 L. Ed. 956, it was held that whether the taking possession of after-acquired property within four months of the filing of the petition in bankruptcy, under a mortgage made in good faith prior to that time, is.good or is void depends upon the law of the state. See, also, In re Hurley (D. C.) 185 F. 852; Fisher v. Zollinger (C. C. A.) 149 F. 54; In re National Valve Co. (D. C.) 140 F. 679.

[3] Upon the authority of these cases, and others examined by the court, we must turn to the decisions in New Hampshire for the purpose of determining the validity of the mortgage and the rights of the parties thereunder. The referee has found that there was an understanding between the mortgagor and the mortgagee that the mortgagor should retain possession of the mortgaged property, and use it or dispose of it for his own benefit, without accounting to the mortgagee for

the proceeds. He finds as a fact that the mortgagor continued to sell said merchandise in the ordinary course of business until May 7, 1924, making no accounting to Bogardus or payments on his note.

It is held by a long line of decisions that such a mortgage is a fraud upon creditors and invalid. Bellows, C. J., in the case of Putnam v. Osgood, 51 N. H. 192, 202, says:

"The avowed object of a mortgage is to secure a debt. If the secret purpose be to protect the mortgagor in the enjoyment of the property and enable him to set his other creditors at defiance, then the mortgage is deemed to be fraudulent and void as to those creditors; and of this there is no controversy. If a trust, inconsistent with the legitimate purpose of a mortgage, is reserved for the benefit of the mortgagor, and that is proved, then a fraudulent intent is, with us and in many other jurisdictions, a conclusion of law. A secret understanding that the mortgagor shall retain the possession of the goods, and continue to sell them as before for his own benefit, is clearly such a trust. As between the parties, the mortgagor remains the owner of the goods, and the mortgage is practically effective only to ward off the claims of other creditors. * * * The practical effect of such a mortgage is to delay and defeat creditors, and it is to be presumed that the parties intended to do what their acts were naturally calculated to accomplish."

See Putnam v. Osgood, 52 N. H. 148; Wilson v. Sullivan, 58 N. H. 260; Coolidge v. Melvin, 42 N. H. 510; Ranlett v. Blodgett, 17 N. H. 298, 43 Am. Dec. 603; Gerrish v. Gerrish, 63 N. H. 128. In the last-named case Judge Carpenter quotes from the Ranlett Case and reaffirms the principle of the other cases above cited.

I have not overlooked the fact that the extreme doctrine that retention by the vendor of property is presumptively fraudulent, starting with Coburn v. Pickering, 3 N. H. 415, 14 Am. Dec. 375, has been somewhat modified by the cases of Thompson v. Esty, 69 N. H. 55, 45 A. 566, and Hodgdon v. Libby, 69 N. H. 136, 43 A. 312; but none of these cases go so far as to deny that a contract which permits the mortgagor to retain possession of the mortgaged property, sell the same, and apply the proceeds to his own account, is a badge of fraud.

The contract being presumptively fraudulent, no lien upon the property attached until possession was taken by the mortgagee. In this case there was no question but that the mortgagor was insolvent on the 2d day of May, when Bogardus took possession of the property. If it can be said that Bogardus obtained any rights in the property superior to the rights of the bankrupt's other creditors, it was not until May 2, 1924, that he did so. On May 26, 1924, Streeter was adjudged a bankrupt. Clearly Bogardus obtained a preference unless, as in Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577, it be held that his taking possession of the goods related back to the date of the mortgage. But that case holds that the extent, if at all, to which a mortgage is valid, is a local question, upon which the decisions of the state court will govern. It therefore follows that authorities from other states holding that mortgages for future advances must be sustained, if possession is taken by the mortgagee before adjudication, are not in point. But, even so, our attention has not been called to a case in any jurisdiction where it has been held that a mortgage, the effect of which is to delay and defeat creditors, tainted with fraud, hence invalid from its inception, has been validated by the act of taking possession within four months of adjudication in bankruptcy.

This is not the typical case of a mortgage upon future-acquired property, given in good faith. The distinction between such case and the instant case is that the mortgage is, in the instant case, void as against creditors under the rulings of the New Hampshire Supreme Court, because it creates a secret trust.

To be sure it is held in Thompson v. Esty and Hodgdon v. Libby, supra, that an assignee in insolvency cannot avoid a sale made by the debtor in good faith for a sufficient consideration, on the ground that it is fraudulent as against creditors, because possession of the property was retained by the vendor, or because a mortgage was defective on account of an insufficient oath. But those cases were determined under the state insolvency law, when it was held that the assignee in insolvency merely stepped into the shoes of the insolvent debtor.

A distinction must be made between cases determined under the Bankruptcy Act (30 Stat. 544) as it existed prior to the amendment of 1910 (36 Stat. 840) and cases determined since the amendment. Under the Bankruptcy Law as amended by the act of 1910, the trustee has the right and powers of a judgment creditor holding an execution duly returned unsatisfied. Bankruptcy Act, § 47 (Comp. St. § 9631).

The purpose of the amendment was to give to the trustee the rights of a lien or judgment creditor, enabling him to protect

general creditors from unrecorded liens, unlawful transfers, spurious claims, and other dissipations of the assets of the estate, which a lien or judgment creditor might have prevented, had the bankruptcy not intervened. The class of cases provided for by the original act, and intended to be reached by amendment, was that in which no creditors had acquired liens by legal or equitable proceedings. The trustee, in the interest of the general creditors, may contest any claim of lien that a judgment creditor might contest, if bankruptcy had not intervened. National Bank of Bakersfield v. Moore (C. C. A.) 247 F. 913.

Bogardus stands no better than if he had on May 2, 1924, for the first time, taken possession of the bankrupt's stock in trade without any prior existing mortgage, for the purpose of applying the proceeds to an overdue indebtedness.

Upon the state of the law in New Hampshire, as the court understands it, the mortgage in suit from its inception was a fraud upon and invalid as against Streeter's creditors. The trustee under the Bankruptcy Act has a superior title to the proceeds of the sale. They are a part of the bankrupt's estate, to be distributed to the creditors. See Clark v. Grimes (D. C.) 232 F. 190.

The order is that the trustee in bankruptcy retain the proceeds of the bankrupt's stock for distribution to the creditors.