## In re SIMPSON.

District Court, D. Idaho, S. D. February 27, 1929.

### No. 3918.

318

and fixtures used in connection with the business known as the "Liberty Market" in Twin Falls, Idaho. On the same day the mortgage was filed for record in the recorder's office of the county. Prior and subsequent to the execution of the mortgage Simpson purchased merchandise from time to time from Simpson & Co. Possession of the mortgaged property was retained by the mortgagor, and he was permitted to sell the same in the actual course of business, without being required by the terms thereof to pay any of the proceeds on the mortgage indebtedness. A portion of the stock of goods was renewed from time to time, and was included in the mortgage indebtedness. The mortgagor paid three of the notes, which amounted to $1,000, on the mortgage debt, and, failing to make further payments, the mortgagor demanded the key to the building where the business was being conducted, and, after consent of the mortgagor, took peaceful possession of it on January 17, 1929, and on the same day he proceeded under section 6382 of the Compiled Statutes of Idaho to foreclose its mortgage by notice and sale, which was set for January 23, 1929.

In the meantime petition in voluntary bankruptcy was, on January 21, 1929, filed in this court by the mortgagor, and application was made by one of his creditors to enjoin the foreclosure proceedings and the appointment of a receiver to take charge of the stock of goods. After a hearing the receiver was directed to sell all of the mortgaged property for not less than $4,000, being an amount sufficient to cover the balance claimed to be due on the notes, and to deposit whatever amount was obtained with the clerk of the court, to be held and applied as the court may direct; neither the objecting parties nor the mortgagee losing any rights or suffering any prejudice by reason of the conversion of the property into money. The money now in the hands of the clerk is claimed by Simpson & Co., the mortgagee, to be applied to its mortgage, while a creditor claims that it is part of the assets of the bankruptcy estate, and should be applied pro rata in payment of claims of creditors. The mortgagor was adjudged a bankrupt on January 21, 1929, and thereafter, on February 5, 1929, a trustee was duly appointed. It seems that the mortgage was executed in good faith and prior to the four-months period of the filing of the petition in bankruptcy. It is a valid and binding contract between the parties, and taking peaceful possession of the mortgaged property prior to the filing of the petition in bankruptcy is not a voidable preference or

Turner K. Hackman, of Twin Falls, Idaho, for petitioning creditors.

Harry Benoit, of Twin Falls, Idaho, for Simpson & Co.

CAVANAH, District Judge. ▆ C. W. Simpson, the bankrupt, and wife, executed, on July 5, 1928, to Simpson & Co. a chattel mortgage, securing the payment of $4,000, evidenced by 12 promissory notes in the sum of $333.33 each, payable on demand, upon the stock of goods, merchandise, furniture,

transfer within the meaning of section 60a of the Bankruptcy Act (11 USCA § 96(a).

Under the facts here presented, the prevailing view, as expressed by the Supreme Court of the state, recognizes the principle that a chattel mortgage on merchandise stock, under which the mortgagor is permitted to retain possession and sell without accounting to the mortgagor for the proceeds, is not void ab initio, but only becomes fraudulent as to creditors in the event the mortgage is not in possession of the mortgaged property prior to the filing of the petition in bankruptcy, and does not arise until the petition in bankruptcy is filed, or the property attached or levied upon by a creditor. Kettenbach v. Walker, 32 Idaho, 544, 186 P. 912. The question being a local one, the decisions of the state Supreme Court will govern, and the authorities from other states holding a contrary view are not in point. Humphrey v. Tatman, 198 U. S. 91, 25 S. Ct. 567, 49 L. Ed. 956; Bryant, Trustee, v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 S. Ct. 614, 53 L. Ed. 997; Hiscock v. Varick Bank of New York, 206 U. S. 28, 27 S. Ct. 681, 51 L. Ed. 945; Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577. Since the decision of the Supreme Court of Idaho in the case of Ryan v. Rogers, 14 Idaho, 309, 94 P. 427, that court has held, in the case of Kettenbach v. Walker, supra, that:

"While it has been held that where a chattel mortgagor is permitted to retain possession of a stock of goods and dispose of it in the ordinary course of trade, without applying the proceeds to a payment of the mortgage debt, such mortgage is void as to attaching creditors of the mortgagor (Lewiston National Bank v. Martin, 2 Idaho, 734, 23 P. 920), it has also been held that where a mortgagee takes possession of the property with the consent of the mortgagor before rights of creditors attach, the mortgage is exempt from the application of the above rule, and if the chattel mortgage is valid between the parties, the possession of such mortgagee is valid and may be maintained and the property sold under the provisions of such mortgage (First National Bank of St. Anthony v. Steers, 9 Idaho, 519, 108 Am. St. [Rep.] 174, 75 P. 225; Ryan v. Rogers, 14 Idaho, 309, 94 P. 427; Neustadter Bros. v. Doust, 13 Idaho, 617, 92 P. 978; Martin v. Holloway, 16 Idaho, 513, 102 P. 3, 25 L. R. A. [N. S.] 110), and this would be equally true as to after-acquired property covered by the terms of the mortgage (Dover Lumber Co. v. Case et al., 31 Idaho, 276, at 285, 170 P. 108; In re National Valve Co. [D. C.] 140

F. 679–681; 11 C. J. 436, note 32; Fisher v. Zollinger [C. C. A.] 149 F. 54, 79 C. C. A. 76, 17 A. B. R. [618]; Akers v. Rowan, 33 S. C. 451, 12 S. E. 165, 10 L. R. A. 705)."

And again the court says:

"The rule is well established that where a chattel mortgagee takes possession of the mortgaged property within the four months' period prescribed by sec. 60a of the National Bankruptcy Act, under the terms of a mortgage valid between the parties and given in good faith prior to the four months' period, the act of taking possession is not a voidable preference or transfer within the meaning of said section. 2 Remington on Bankruptcy (2d Ed.) p. 1222, § 1370; Sexton v. Kessler & Co., 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995, 28 A. B. R. 85, affirming the same case 172 F. 535, 97 C. C. A. 161, 40 L. R. A. (N. S.) 639, 21 A. B. R. 807; Thompson v. Fairbanks, 196 U. S. 516, 517, 25 S. Ct. 306, 49 L. Ed. 577; Fisher v. Zollinger, supra; Collier on Bankruptcy (11th Ed.) 873; In re Automobile Livery Service Co. (D. C.) 176 F. 792, 23 A. B. R. 799; Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275; Anderson v. J. C. & N. B. Chenault, 208 F. 400, 125 C. C. A. 616. The rule is used upon the theory that such a mortgage, constituting a valid and binding contract between the parties, must be given effect according to their intention; that it is already obligatory upon them and continues to be so until fully executed, and that in taking possession in pursuance of its provisions the mortgagee exercises a right belonging to him thereunder. Fisher v. Zollinger, supra. Nor do the provisions of section 47a, as amended, of the National Bankruptcy Act, giving general creditors the status of creditors holding liens by legal or equitable process, militate against the rule, for the reason that, as stated by the Supreme Court of the United States, such status of the general creditors does not arise until the petition in bankruptcy is filed. Bailey v. Baker Ice Machine Co., supra; Anderson v. Chenault, supra; 2 Remington on Bankruptcy (2d Ed.) p. 1124, § 1270, 3/10. The contrary rule seems to prevail only in those jurisdictions which hold that a chattel mortgage of merchandise stock under which the mortgagor is permitted to retain possession and sell without accounting to the mortgagee for the proceeds is fraudulent in fact and void ab initio. Schaupp v. Miller (D. C.) 206 F. 575. As already observed, the rule is otherwise in this jurisdiction."

It is true that under the Bankruptcy Law, as amended by the act of 1910, the trus-

tee has the right and power of a judgment creditor holding an execution returned unsatisfied as of the time when the petition in bankruptcy is filed. Bankruptcy Act, § 47 (Comp. Stats. § 9631; 11 USCA § 75). The principle is in harmony with the view expressed by the Supreme Court in the case of Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275, where the court said:

"Here the contract was made October 14, 1911, and filed for record May 15, 1912. In the meantime no creditor fastened a lien upon the property by execution, attachment, or other legal process. But it is contended that section 47a, clause 2, of the Bankruptcy Act, as amended in 1910, 36 Stat. 838, 840, c. 412, gave the trustee the status of a creditor having such a lien. That section provides that a trustee in bankruptcy, 'as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings.' Although otherwise explicit, this provision does not designate the time as of which the trustee is to be regarded as having acquired the status indicated, and yet some point of time must be intended. Is it the date of the trustee's appointment, the filing of the petition in bankruptcy, or some time anterior to both? When not otherwise specially provided, the rights, remedies and powers of the trustee are determined with reference to the conditions existing when the petition is filed. It is then that the bankruptcy proceeding is initiated, that the hands of the bankrupt and of his creditors are stayed and that his estate passes actually or potentially into the control of the bankruptcy court. We have said: 'The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and disposition of his estate. The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate is regarded as in custodia legis from the filing of the petition.' Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, [307] 357 [32 S. Ct. 96, 99 (56 L. Ed. 208)]. And again: 'We think that the purpose of the law was to fix the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition.' Everett v. Judson, 228 U. S. 474, 479 [33 S. Ct. 568, 569 (57 L. Ed. 927, 46 L. R. A. [N. S.] 154)]. And see Zavelo v. Reeves, 227 U. S. 625, 631 [33 S. Ct. 365, 57 L. Ed. 676]. Had it been intended that the trustee should take the status of a creditor holding a lien by legal or equitable process as of a time anterior to the initiation of the bankruptcy proceeding, it seems reasonable to believe that some expression of that intention would have been embodied in section 47a as amended. As this was not done, we think the better view, and one which accords with other provisions of the act, is that the trustee takes the status of such a creditor as of the time when the petition in bankruptcy is filed. Here the petition was filed almost two months after the contract was filed for record, and therefore the trustee was not entitled to assail it under the recording law of the state."

See, also, In re East End Mantel & Tile Co. (D. C.) 202 F. 275; In re Hagin (D. C.) 21 F.(2d) 434.

The mortgagee here, being in possession with the consent of the mortgagor at the time of the filing of the petition in bankruptcy and prior to the adjudication of the bankrupt, he would be entitled to retain such possession as against the trustee in bankruptcy and general creditors. In re Howard (D. C.) 207 F. 402. Where the property of the bankrupt had not come, as in this case, into possession of the bankruptcy court prior to the foreclosure of a valid mortgage given by the bankrupt more than four months prior to the filing of the petition in bankruptcy, a court of bankruptcy will not enjoin or interfere with foreclosure proceedings instituted under the law and in the state court before the bankruptcy court acquired jurisdiction. Ft. Dearborn Trust & Savings Bank v. Smalley (C. C. A.) 298 F. 45. And so, if the mortgagee takes possession of the property prior to the petition in bankruptcy, the mortgage is valid and should be upheld by the courts in Idaho. Fisher v. Zollinger (C. C. A.) 149 F. 54; In re Chantler Cloak & Suit Co. (D. C.) 151 F. 952; In re Johnson (D. C.) 282 F. 273.

It will be remembered that the objecting creditor had not acquired the mortgaged property either by attachment, levy under execution, or other lien; nor had the property passed into the possession of the trustee, but the mortgagee had seized it with the consent of the mortgagor and proceeded to sell it according to law, before the petition in bankruptcy had been filed, or any creditor attempted to move in the matter.

The mortgage here provides that the stock of merchandise should be kept up to the same value as it was at the time of its ex-

ecution, and a failure to do so would operate as a breach of the conditions of the mortgage. Such provision is valid and grants a lien upon such after-acquired property. Kettenbach v. Walker, supra; In re National Valve Co. (D. C.) 140 F. 679. The mortgagor, from the proceeds of the sale of the goods, replenished his stock, and did so until about December 15, 1928.

It is urged that sections 5432 and 5433 of the Compiled Statutes of Idaho, relating to transfers of property in fraud of creditors, apply here, as the mortgage grants a trust for the use of the mortgagor, and was made with intent to delay and defraud creditors of the mortgagor. The facts in the record do not warrant such a conclusion, as there is nothing indicating that the transaction was done in secret, or otherwise so as to create a trust, or with intent to delay or defraud creditors. The evidence discloses that at the time the mortgage was executed the mortgagor owed the mortgagee about $2,800, and in order to replenish the stock and keep the business of the mortgagor going the mortgagee extended a further credit of $1,200, which was used in keeping up the stock of the mortgagor, and further there was furnished by the mortgagee merchandise to the amount of $600, as appears in an open account. At that time the average sales of the business were about $6,000 a month, and the stock was kept replenished until December 15, 1928. The percentage of profit appears to be 18 per cent., and the monthly expenses in the operation of the business were about $700. So it will be seen that the mortgage was in fact given to aid the mortgagor in continuing his business; otherwise, it would have been then closed, and the intention of the mortgagee was not to delay or defeat other creditors, as it appeared then that the profits of the business were sufficient to eventually take care of all creditors. It is unreasonable to assume that the bona fides of the transaction is open to question.

My conclusion is, therefore, that as the mortgage was made in good faith, before the four-months period, and the mortgagee having taken possession of the property prior to the filing of the petition in bankruptcy under the state law, and with the consent of the mortgagor, it is valid as against the bankrupt and general creditors, and that so much of the proceeds arising from the receiver's sale of the mortgaged property now deposited with the clerk as is necessary to pay the balance of $3,000 principal, $157.33 interest, $252.48 taxes, and $250 attorney's fees,

should be paid to Simpson & Co., the mortgagee.

An order will be entered accordingly.