## In re FREAMAN.

### No. 4918.

### United States District Court
### D. New Hampshire.
### April 19, 1949.

Ernest R. D'Amours, Manchester, N. H., for petitioner.

Myer Saidel, Manchester, N. H., for the bankrupt.

CONNOR, District Judge.

This is a petition to review the order of the referee in bankruptcy disallowing as secured and allowing only as unsecured the claim of the petitioner, the M-A-C Plan Acceptance Corporation.

The referee found that the M-A-C Plan Acceptance Corporation on December 24, 1947, lent a sum of money, now agreed to be in the amount of $699.92, which is the subject of the proof of claim, to the debtor on a note supported by a mortgage, duly recorded, on personal property which was described as including "all merchandise on hand at the Central Furniture Company, 613 Elm Street, Manchester, N. H., on any future date of default of this contract and at the time of the inception of any legal proceedings instituted by M-A-C Plan Acceptance Corporation." It was further found that the debtor had the right to sell the stock or merchandise generally covered by the said mortgage and that the petitioner had knowledge that such was being sold from the store in the usual course of business, that no specific accounting was demanded of the debtor by the petitioner of monies received from the sale thereof, it being only required of the debtor that he make definite monthly payments.

The legal question involved is whether a chattel mortgage upon a shifting stock in trade is valid if it is given with the understanding that the business may be continued in the ordinary way without the mortgagor making any accounting for the proceeds of the mortgaged property sold. The petitioner in his petition contends that the referee erred in disallowing as secured and allowing only as unsecured its claim, "inasmuch as he fell into plain error in his interpretation of sections 2 and 19 of Chapter 262 of the Revised Laws of New Hampshire 1942."

Section 2. "Consumption of Foodstuffs; After Acquired Property, etc. No personal property mortgage shall be invalid, nor shall the extent of the lien thereof be affected because of any provision that the mortgagor may use and consume mortgaged foodstuffs in preserving and preparing for market any live stock covered thereby. If so provided in the mortgage, substitutions for or replacements of live stock described in the mortgage, and their natural increase, property purchased with the proceeds of the loan secured thereby after the execution of the mortgage and prior to its extinguishment, and additional amounts that may be advanced by the mortgagee, at his option, to the mortgagor within a period of one year from the date of the execution of the mortgage, not exceeding in the aggregate an amount stated in the mortgage, shall be covered and secured by such mortgage to the same extent as the property originally described in and the amount originally advanced under the mortgage."

Section 19. "Consent to Sell. A personal property mortgage may provide that the mortgagor with the permission of the mortgagee may sell or exchange any of the mortgaged property in accordance with the provisions of the mortgage without notice to or consent of any subsequent mortgagee or lienor of the mortgaged property, if the proceeds of such sale or exchange are applied upon the mortgage debt or are used for the purchase of property to be included in the mortgage lien, or are used for the purpose of paying the expense of cultivating, harvesting, preparing for market, processing, marketing, or otherwise preserving or rendering marketable or salable the remaining property covered by the mortgage, and no such provision shall in any way render invalid or affect the lien of the mortgage or its preference or priority; but unless the mortgage so permits, no mortgagor shall sell, pledge, or exchange any of the mortgaged property without the written consent of the mortgagee, recorded in the office where the mortgage is recorded, or endorsed upon the mortgage and upon the margin of the record thereof."

On the findings of the referee that the arrangement under which the parties were acting created a secret trust, "presumptively fraudulent as to creditors and therefore is void", and to the further ruling that the cited statute had no application, the claimant filed this petition for a review. The referee's certificate does not contain a transcript of the evidence or a summary thereof as required by clause (8) of Section 39, sub. a of the Act, 11 U.S.C.A. § 67, sub. a (8), but the findings do not appear to be erroneous on their face.

■■ The contention of the petitioner cannot be supported under either the well-settled rule or the cited statute. The generally accepted doctrine is that any transfer of property as security, with reservation to the transferor of the right to dispose of or to apply the proceeds thereof for his own uses, is, as to creditors of the transferor, mortgagor, or trustee in bankruptcy of the estate of the said transferor or mortgagor, fraudulent in law and void. The authoritative case on this subject is that of Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991, which has been followed in a long line of decisions. A full discussion of this doctrine is found in Collier's on Bankruptcy, 14th Ed. Vol. 4, beginning at p. 1376. See also annotations in 11 U.S.C.A. § 110, at page 714, note 516. This rule has long been the law in this jurisdiction. Putnam v. Osgood, (1872) 52 N.H. 148; In re Streeter, D.C., 20 F.2d 157; In re Kibbie, D.C., 8 F.Supp. 809.

Nor does the statute, enacted subsequently to the foregoing decisions, furnish the claimant any aid, for the very obvious reason that the found facts do not come within its design. However broadly this legislation may be viewed, it is not applicable to the situation here presented. If it were established that the stock in trade at the bankrupt's place of business at the time

of the filing of the bankruptcy petition was "property purchased with the proceeds of the loan" and the mortgage contained a proviso for such inclusion, the statute could be in propriety invoked; but the record contains no such finding. Similarly, though the language of the mortgage could be construed to mean that substitution was contemplated, it would still lack any provision consonant with the requirements of Section 19, under which sale, exchange or substitution of mortgaged property is permitted.

The record fails to disclose that the findings are clearly erroneous, and hence must be confirmed and adopted.

An order will be entered.